ALLAN J. HAMILTON, Indiv. and as Trustee, *et al.*, Plaintiffs-Appellants, v. J. McDONALD WILLIAMS *et al.*, Defendants-Appellees.

Second District No. 2—92—0026

Opinion filed November 24, 1992.

Myron M. Cherry, Peter Flynn, and William R. Coulson, all of Cherry & Flynn, and Howard P. Ryan, of Peterson & Ross, both of Chicago, and Schirott & Associates, P.C., of Itasca (James R. Schirott, of counsel), for appellants.

James R. Daly, F. Samuel Eberts III, and Carol A. Tiesi, all of Jones, Day, Reavis & Pogue (Daniel E. Reidy, of counsel), and Dan K. Webb, of Winston & Strawn, both of Chicago, and John E. Norton, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, former partners in a real estate venture with defendants, filed this timely appeal from an order of the circuit court of Du Page County denying, *inter alia*, their motion pursuant to section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401) to declare as void for lack of subject-matter jurisdiction an earlier mandate entered by this court. Defendants filed a motion to dismiss this appeal and for an award of sanctions. Defendants' motion and objections thereto are taken with the case.

The issues presented for review are: (1) whether a section 2—1401 petition brought in the trial court is the proper means to challenge the subject-matter jurisdiction of an appellate court over an earlier appeal by the parties; (2) whether this court had jurisdiction to consider the first appeal between the parties in this matter (see *Hamilton v. Williams* (1991), 214 Ill. App. 3d 230); and (3) whether the institution of this appeal warrants the imposition of sanctions.

The facts underlying this matter are detailed in *Hamilton v. Williams* (1991), 214 Ill. App. 3d 230. We will, therefore, provide only a background summary of the facts taken from our earlier opinion.

Defendant Trammel Crow (Crow) is a large nationwide real estate organization. Plaintiffs (Hamilton Partners) are former partners of Crow in various real estate projects located in and around the Chicago area. In January 1987, Hamilton Partners resigned from Crow, triggering the buy-sell provisions of various limited real estate partnership agreements. As a result, litigation ensued, and the parties subsequently entered into settlement negotiations.

During the negotiations, the parties agreed to a division of the properties. The parties' settlement agreement was memorialized, in part, in a letter of intent. The letter of intent provided that in the event the parties could not agree upon a value for various properties within 10 days, Sudler Marling, Inc., and American Appraisal Associ-

ates would be directed by Hamilton Partners and Crow, respectively, to deliver their independent determinations of the value of each party's respective interest in the disputed properties. The agreement also provided "that if one party should fail to submit its report in a timely manner, as outlined in the letter of intent, the first determination delivered would be conclusive and binding on the parties" (hereinafter referred to as the "first in time remedy"). Upon submission of the two reports, the parties were then allowed two additional days to resolve differences in the reports, and failing that, the reports would be submitted to an arbitrator named in the document. Such arbitration would be considered final and conclusive.

The parties were unable to agree on the values for various properties thus triggering the arbitration mechanism in the letter of intent. In particular, two properties were at issue, the Hamilton Lakes business park and Hamilton Lakes office park. During the appraisal period, Crow became concerned that the quality of the appraisal information provided by American Appraisal was not of sufficient quality and that American might not meet the submission deadline. Consequently, Crow hired Jared Schlaes to appraise the two properties. Schlaes subsequently learned that the arbitrator was to be John T. Ryan of Cushman and Wakefield. Schlaes disclosed to Crow that he and Ryan had a prior employment relationship, but he did not consider it to be a problem.

After becoming concerned about its use of Schlaes instead of American, Crow persuaded American to assume the appearance of a contractor/subcontractor relationship with Schlaes. American subsequently "adopted" Schlaes' appraisal reports. Schlaes' report valued the two properties in question at $22.8 million and $14.8 million, respectively. In contrast, Hamilton Partners' appraiser set the values substantially higher at $67.29 million and $22.5 million.

Upon discovering that the Crow appraisals were prepared by Schlaes rather than American, Hamilton Partners became concerned and felt that the matter was in need of investigation. Despite their concern and uncertainty about the use of the Schlaes reports, however, Hamilton Partners chose to proceed with the arbitration. Apparently, they were of the opinion that because the reports were of such poor quality and reflected values that were unreasonably low, the arbitrator would reject them thus possibly providing Hamilton Partners with a strategic advantage. Accordingly, Hamilton Partners raised no objection to the use of the reports prior to the arbitrator's decision. The arbitrator subsequently determined the values of the two properties to be $25 million and $15 million (*i.e.*, values very close to the

Schlaes appraisal) and nearly $50 million less than the Hamilton Partners' appraisal.

Two days later, Hamilton Partners filed an emergency motion to enforce the letter of intent and to apply the "first in time remedy" on the grounds that (1) Crow's use of Schlaes amounted to a breach of the letter of intent; and (2) Schlaes' former employment relationship with the arbitrator fatally tainted the arbitration.

In a subsequent proceeding, the trial court determined that the relationship of Schlaes and the arbitrator was not a fatal conflict of interest. Following a lengthy trial on Hamilton Partners' emergency motion, the trial court concluded that Crow's use of Schlaes was tantamount to a breach of the letter of intent; that Hamilton Partners had not knowingly and intentionally waived Crow's breach of the agreement; but their conduct subsequent to the breach waived their right to the "first in time remedy."

Significant to the present appeal, the trial court, on June 24, 1988, entered its order *nunc pro tunc* June 16, 1988 (June 24 order), vacating the arbitration award with respect to the two properties, and directing the parties to submit a plan for appraisal and rearbitration. On December 2, 1988, the parties entered into an agreed order for rearbitration (December 2 order).

As a practical matter, the June 24 order consists of two component parts. The first part of the order vacated the original arbitration award, in connection with the Hamilton Lakes office and business park properties, made by arbitrator John Ryan. The second part directed the parties to submit a plan for appraisal and arbitration of the properties which were the subject of the vacated award. We note that the order contained no express language compelling arbitration, nor was the order entered pursuant to a motion by either party to compel arbitration. Additionally, Hamilton Partners state in their brief that at that instant in the litigation neither party desired further arbitration and that the parties desired the trial court to determine the values of the properties in question.

The December 2 order, entitled "Agreed Order for Rearbitration," provided the methodology for determining, *inter alia*: the fair-market value of the properties; qualifications and selection of appraisers; selection and duties of the arbitrator; deadlines for appraisals; and an agreement that the entry of the order was "without prejudice to the rights of any party to appeal consistent with Illinois law from the rulings and orders heretofore made on June 16 and June 24, 1988." Also included in the December 2 order was a statement in the introductory paragraph that reads, in part, as follows: "that the ap-

praisal and arbitration of the \*\*\* properties \*\*\* ordered by this Court shall be implemented as set forth herein."

In July 1989, the new arbitrator assigned values of $53 million and $19.5 million to the two properties, the identical values assigned by Hamilton Partners' second appraiser. Following subsequent motions and hearings, the court, on November 22, 1989, entered its order "with respect to all issues arising from [Hamilton Partners'] July 22, 1987, Emergency Motion Pursuant to the Court's Order to Retain Jurisdiction." The order decreed, among other things, that Crow pay to Hamilton Partners $8,535,000 as a result of the partial order entered August 8, 1988, confirming the rearbitration award, and interest on the amount from August 26, 1987, to August 18, 1989. The order also contained a Rule 304(a) finding (see 134 Ill. 2d R. 304(a)) that there was "no just reason for delaying enforcement of, or any appeal from, this order and/or any other orders and rulings arising from [p]laintiffs' July 22, 1987, [e]mergency motion." On December 19, 1989, defendants filed their notice of appeal from various orders entered by the trial court including the June 24, 1988, order, the December 2, 1988, order and the November 22, 1989, order.

In the first appeal to this court, we determined the dispositive issue as being whether the trial court erred in vacating the original arbitration award "because Hamilton Partners waived its right to object to Crow's use of a substitute appraiser by proceeding to arbitration with knowledge of the substitute appraiser without objection thereto." (*Hamilton*, 214 Ill. App. 3d at 239.) It appears from the record and the parties' memoranda in the present action that neither party raised the issue of appellate jurisdiction during the pendency of the first appeal. This court held that Hamilton Partners' proceeding to arbitration without objection with knowledge of Crow's breach of the letter of intent waived their right to the "first in time" remedy and the same conduct waived the breach itself. (*Hamilton*, 214 Ill. App. 3d at 243.) Consequently, on May 15, 1991, this court filed its opinion and disposition reversing the circuit court's order which vacated the first arbitration, vacating subsequent orders entered by the trial court in connection with the rearbitration and remanding with directions to reinstate the first arbitration award. *Hamilton*, 214 Ill. App. 3d at 248.

On July 8, 1991, this court denied Hamilton Partners' petition for rehearing. It appears from the record that no issue of appellate jurisdiction was raised in that petition.

On October 2, 1991, the Illinois Supreme Court denied Hamilton Partners' petition for leave to appeal. In their petition, Hamilton

Partners, for the first time, raised the issue of whether this court had subject-matter jurisdiction to hear the first appeal.

On November 12, 1991, the Illinois Supreme Court denied Hamilton Partners' motion for leave to file an original writ of *mandamus*/ prohibition or for a supervisory order. The only issue raised in this petition was the jurisdictional issue.

On November 19, 1991, Hamilton Partners filed in the trial court an emergency petition pursuant to section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401) alleging that the judgment of this court reversing the trial court's orders of June 24, 1988, and December 2, 1988, compelling arbitration was void for want of subject-matter jurisdiction. Hamilton Partners argued that Crow's failure to file a timely notice of appeal pursuant to Supreme Court Rule 307 (see 134 Ill. 2d R. 307) with regard to the June 24 and December 2 orders deprived this court of jurisdiction. During the hearing on the petition, Crow argued that the June 24 order vacating the original arbitration was not tantamount to an order compelling arbitration and that the focus was upon the vacatur of the original arbitration. Hamilton Partners' petition further alleged, and Crow argued to the contrary, that a section 2—1401 petition was the proper means to challenge the appellate court's jurisdiction over the first appeal.

On November 25, 1991, this court issued its mandate as follows: "[I]n accordance with the views expressed in the attached decision the judgment of the Circuit Court of Du Page [C]ounty entered *nunc pro tunc* June 16, 1988, vacating the first arbitration award is reversed, and its subsequent orders entered in connection with re-arbitration are vacated. The cause is remanded with directions to reinstate the first arbitration award. Reversed and Remanded."

On December 9, 1991, after considering Hamilton Partners' section 2—1401 petition, the circuit court entered its order as follows: (1) denying Hamilton Partners' motion to declare as void for want of jurisdiction the appellate court's mandate and reinstate the original arbitration award; (2) releasing the appeal bond posted by Crow; and (3) denying Hamilton Partners' request for a stay of those orders pursuant to Supreme Court Rule 305(b) (see 134 Ill. 2d R. 305(b)).

On January 6, 1992, Hamilton Partners appealed from the circuit court's order denying their section 2—1401 petition. In response, Crow filed a motion to dismiss the appeal and for an award of sanctions. During the pendency of this appeal, Hamilton Partners filed their motion for direct appeal to the Illinois Supreme Court pursuant to Supreme Court Rule 302(b) (see 134 Ill. 2d R. 302(b)) which was subsequently denied on March 5, 1992.

Hamilton Partners' primary contention is that this court lacked subject-matter jurisdiction to consider the first appeal as a result of Crow's failure to file a timely notice of appeal from the trial court's entry of either the June 24 or the December 2 orders "compelling arbitration." Hamilton Partners argue that the December 2 agreed order's explicit characterization of the June 24 order as an order of the court requiring rearbitration evidences the court's intention to compel arbitration. Hamilton Partners further appear to argue that, notwithstanding the nature of the June 24 order, the December 2 order clearly compelled arbitration thus making it immediately appealable as of right pursuant to Supreme Court Rule 307. In its appellate brief, Crow contends that the June 24 order requiring the parties to submit a plan for the appraisal and arbitration contained "none of the telltale signs of an injunction." Crow further argues that the December 2 agreed order adds nothing to Hamilton Partners' argument because the order was not entered in response to a motion to compel arbitration and, where no party has moved to compel arbitration, the entry of an order providing for rearbitration is not an order compelling arbitration. Crow also argues that even if the December 2 order was considered an order compelling arbitration, an interlocutory appeal of that order would not have reached the issue of the vacatur of the original arbitration award.

In the motion to dismiss, the objections thereto, and the briefs, the parties have articulated numerous arguments supported by extensive citation to authority which we have carefully considered. We will address only those points necessary to reach a disposition of this protracted litigation.

We proceed initially to the issue of whether an appellate court's jurisdiction over an earlier appeal between the parties may be attacked by way of a section 2—1401 petition in the trial court after the issuance of a mandate directed to the merits of the case, noting that neither party has provided any directly controlling case law.

An appellate court is under a duty to consider its jurisdiction and to dismiss an appeal if jurisdiction is lacking. (*Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440; *Gilkey v. Scholl* (1992), 229 Ill. App. 3d 989, 992; *Village of Lake in the Hills v. Hain* (1991), 222 Ill. App. 3d 88, 90.) Even if the issue is not raised by the parties, this court must nevertheless determine the question of its jurisdiction (*Carlson v. Powers* (1992), 225 Ill. App. 3d 410, 413; *Canfield v. Delheimer* (1991), 210 Ill. App. 3d 1055, 1057) prior to deciding the merits of an appeal (*Steel City Bank v. Village of Orland Hills* (1991), 224 Ill. App. 3d 412, 416). Implicit in these rules is the

principle that an appellate court's proceeding to the merits of an appeal necessarily contemplates a threshold jurisdictional inquiry and determination. As a question of law before the court, once determined it becomes the law of the case. Moreover, the failure of a court of review to explain its rationale on a jurisdictional issue is irrelevant, "for the law of the case turns on whether a court previously 'decide[d] upon a rule of law' *** not on whether, or how well, it explained the decision." (*Christianson v. Colt Industries Operating Corp.* (1988), 486 U.S. 800, 817, 100 L. Ed. 2d 811, 830, 108 S. Ct. 2166, 2178.) After due consideration, we hold that our decision to proceed to the merits of the first appeal between the parties implicitly constituted a determination on the issue of appellate jurisdiction thus rendering it the law of the case. Therefore, upon return of the mandate reversing the trial court's vacatur of the first arbitration award and vacating its subsequent orders in connection with the rearbitration, the trial court was bound by this court's determination of all questions decided, and its sole obligation was to act in conformance with this court's judgment. (See *Salkeld v. V.R. Business Brokers, Inc.* (1992), 231 Ill. App. 3d 441, 445.) The only question remaining open for further consideration by the trial court, therefore, was whether it entered its order in compliance with the mandate. *P S L Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 309; *People v. National Builder's Bank* (1957), 12 Ill. 2d 473, 474.

Although decided in a different jurisdictional context, we find persuasive support for our holding in the following pronouncement of the United States Supreme Court:

" 'As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' [Citation.] This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' [Citation.]
***

*** [T]he law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.' [Citation.] A court has the power to revisit prior decisions of its *own* ***, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " (Emphasis added.) *Christianson,* 486 U.S. at 815-17, 100 L. Ed. 2d at 830-31, 108 S. Ct. at 2177-78, quoting *Arizona v. California*

(1983), 460 U.S. 605, 618 n.8, 75 L. Ed. 2d 318, 333 n.8, 103 S. Ct. 1382, 1391 n.8.

Additionally, our supreme court has held that where an appellate court determines an issue of law governing a particular case, its holding establishes the law of the case and, as such, binds the trial court and appellate court in any subsequent proceeding between the parties. (See *P S L Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 312.) Although the factual scenario in *P S L Realty* differs once again from the present case, we share the court's concern that at some point in time there must be an end to litigation. A case that appears interminable "will certainly prove to be so if the various courts through which it passes must consider and reconsider each question several times." (*P S L Realty*, 86 Ill. 2d at 313.) We conclude that the trial court correctly refused to void the mandate of this court on the ground of defective appellate jurisdiction in the first appeal. Litigation that is interminable is intolerable.

We note, however, that the appellate and trial courts' adherence to the law of the case doctrine would not insulate the jurisdictional issue from review by the supreme court. (See *Christianson*, 486 U.S. at 817, 100 L. Ed. 2d at 831, 108 S. Ct. at 2178.) Nor is our decision here intended to foreclose a legitimate challenge to this court's jurisdiction through a timely petition for rehearing. (See, *e.g., Wilburn v. City of Chicago* (1984), 123 Ill. App. 3d 744.) As noted earlier, Hamilton Partners did in fact petition this court for rehearing in the original appeal although they apparently did not raise the jurisdictional issue therein. They also filed a petition for leave to appeal and a motion for leave to file an original writ of *mandamus*/prohibition or for a supervision order, both of which raised the issue of this court's jurisdiction.

■ While we remain mindful of the general principle that jurisdiction may be attacked in any court at any time, in our view, to allow challenges to appellate jurisdiction in the trial court after the issuance of a mandate directed to the merits would wreak havoc on our well-structured system of review. Moreover, our decision to reach the merits of the first appeal did not work a manifest injustice abrogating the application of the law of the case doctrine because, as discussed below, this court had jurisdiction to consider the first appeal on the merits.

■ The Illinois Constitution provides, in part, that "[a]ppeals from final judgments of a Circuit Court are a matter of right to the Appellate Court." (Ill. Const. 1970, art. VI, §6.) Since the procedures for effecting one's constitutional right and invoking the appellate

court's jurisdiction are purely statutory, the requirements provided within our supreme court rules must be complied with. (*People v. Allen* (1977), 49 Ill. App. 3d 108, 111.) Appellate jurisdiction cannot be conferred by agreement of the parties (*E.J. De Paoli Co. v. Novus, Inc.* (1987), 156 Ill. App. 3d 796, 798), nor may the failure to file a timely notice of appeal be waived by the parties (*Johnson v. Coleman* (1977), 47 Ill. App. 3d 671, 674).

■ It is axiomatic that an appellate court's jurisdiction is confined to reviewing final orders or judgments, unless the particular judgment or order falls within an enumerated category permitting interlocutory appeals. (*In re Marriage of Agustsson* (1992), 223 Ill. App. 3d 510, 514.) An appellate court's threshold inquiry, therefore, is whether the order appealed from is final and appealable. (*Trizzino v. Kline Brothers Co.* (1982), 106 Ill. App. 3d 230, 232.) In our jurisdictional analysis, therefore, the first step is to determine whether the orders of June 24 and December 2 were final.

■ A final order terminates the litigation on the merits of the case and determines the ultimate rights of the parties, so that, if affirmed, the only action remaining is to proceed to judgment. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171; *Agustsson*, 223 Ill. App. 3d at 514.) The purpose of a final order is to prevent the multiplicity of suits and piecemeal appeals. *Kinkin v. Marchesi* (1991), 213 Ill. App. 3d 176, 178.

On the date of entry, the first part of the June 24 order vacating the original arbitration award was a nonfinal order because the dispositive issue of the values of the properties was still undetermined, thus leaving open a question on the merits. Likewise, the second part of that order contemplated the submission of additional information necessary to resolve a material issue in the litigation, thus making it nonfinal. Next, the December 2 order cannot be deemed final because it necessarily contemplated further action by the parties to resolve a material issue (*i.e.*, the value of the properties).

Having determined that the orders of June 24 and December 2 were nonfinal, the next inquiry is whether the June 24 and December 2 orders were otherwise appealable. Hamilton Partners contend that the June 24 and December 2 orders were tantamount to an order compelling arbitration, and, when entered by the circuit court, the orders became immediately appealable as of right pursuant to Supreme Court Rule 307 (see 134 Ill. 2d R. 307). Crow contends that Hamilton Partners' argument overlooks the fact that the issue raised in the prior appeal was whether the trial court erred in vacating the first arbitration award, and not that portion of the order which addressed

the plan for appraisal and arbitration. Crow argues that vacatur of an arbitration award is not immediately appealable as of right under Rule 307. Crow further maintains that its appeal was brought properly pursuant to Supreme Court Rule 304(a) (see 134 Ill. 2d R. 304(a)) and that it was not until the trial court's entry of the November 22, 1989, order, and the requisite Rule 304(a) finding that there was "no just reason for delaying enforcement or appeal," that the time for filing its notice of appeal began to run.

It is apparent from the parties' arguments that Hamilton Partners have focused upon the plan and appraisal language of the June 24 order and the introductory language in the December 2 order as a basis upon which to characterize the orders as compelling arbitration. In contrast, Crow's argument, in part, focuses upon the first part of the June 24 order vacating the original arbitration award as the basis for its contention that the issue raised in the original appeal was related to vacatur and not to compelling arbitration.

■ It is well established that appeals from interlocutory orders are permitted only as specifically provided in the rules (*Robert A. Besner & Co. v. Lit America, Inc.* (1991), 214 Ill. App. 3d 619, 623), and, if allowed by the rules, such orders are immediately appealable as of right (*Besner*, 214 Ill. App. 3d at 623). Additionally, if an order is entered which is immediately appealable as of right under Rule 307, an appeal must be perfected within the time frame prescribed by the rule or the right to challenge the ruling will be lost. (*Besner*, 214 Ill. App. 3d at 625-26.) Supreme Court Rule 307 provides, in relevant part:

"Rule 307. Interlocutory Appeals as of Right

(a) Orders Appealable; Time. An appeal may be taken to the Appellate Court from an interlocutory order of court:

(1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." (134 Ill. 2d R. 307(a)(1).)

The purpose of Rule 307(a)(1) is to provide interlocutory review of a court's exercise of its equitable power to grant injunctive relief and to prevent abuses of the power that could result in irreparable harm. (*In re Marriage of Johnston* (1990), 206 Ill. App. 3d 262, 264.) In its determination of what constitutes an appealable injunctive order under Rule 307(a), a court will look to the substance of the action and not the form. (*In re A Minor* (1989), 127 Ill. 2d 247, 260.) Actions of the circuit court having the force and effect of injunctions are appealable even if labeled as something else. *Minor*, 127 Ill. 2d at 260; see, *e.g.*, *Notaro v. Nor-Evan Corp.* (1983), 98 Ill. 2d 268; see also *In re Marriage of Blitstein* (1991), 212 Ill. App. 3d 124, 130 (protective order entered pursuant the Domestic Violence Act); *Zurich Insurance*

*Co. v. Raymark Industries, Inc.* (1991), 213 Ill. App. 3d 591, 594 (denial of a motion to stay); *In re Marriage of Granger* (1990), 197 Ill. App. 3d 363, 372 (gag order restraining parties and attorneys from making extrajudicial comments).

Hamilton Partners direct our attention to *Notaro v. Nor-Evan Corp.* (1983), 98 Ill. 2d 268. In *Notaro*, the defendant appealed from an order of the circuit court denying its motion to compel arbitration. Our supreme court expressly held that an order denying a defendant's motion to compel arbitration was immediately appealable under Rule 307. (*Notaro*, 98 Ill. 2d at 271.) The court acknowledged the appellate court's analogizing the order in *Notaro* to an order granting or denying injunctive relief. *Notaro*, 98 Ill. 2d at 270.

After considering the facts of *Notaro*, we conclude that the orders entered in the present case are distinguishable. In *Notaro*, the defendant requested specifically that the trial court enter an order compelling arbitration. Here, the trial court's order was not in response to a party's motion to compel arbitration. Additionally, the underlying issue in *Notaro* was the arbitrability of the dispute and not, as here, the implementation of an arbitration procedure previously agreed to by the parties. In other words, the arbitrability of the dispute in the present case was not in question, thus eliminating from the June 24 and December 2 orders any trait of compulsion. The orders here regulated the procedural details of an already acknowledged arbitrable dispute. Indicative of this rationale is the *Notaro* court's discussion of the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 101 *et seq.*) which, in part, provided that a court may compel arbitration where an arbitration agreement is shown to exist and one party refuses to arbitrate. (*Notaro*, 98 Ill. 2d at 273.) Implicit within that provision is the recognition of a challenge to the arbitrability of a dispute. Moreover, we note that Hamilton Partners in their brief stated that upon vacatur of the first arbitration neither party desired further arbitration and that both parties wanted the trial court to determine the appropriate values of the properties in question. Therefore, by Hamilton Partners' own admission, neither party sought to compel arbitration in response to a challenge to the arbitrability of their dispute.

■ Although the June 24 and December 2 orders entered here are distinguishable from *Notaro*, it is still necessary to consider whether the December 2 and the second part of the June 24 orders were in substance orders granting injunctive relief thus bringing them within the ambit of Rule 307. An injunction has been described as " 'a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency

of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights.' " (*Minor*, 127 Ill. 2d at 261, quoting *Wangelin v. Goe* (1869), 50 Ill. 459, 463.) Our supreme court, however, has also stated:

> "Not every nonfinal order of a court is appealable, even if it compels a party to do or not do a particular thing. Orders of the circuit court which can be properly characterized as 'ministerial,' or 'administrative'—because they regulate only the procedural details of litigation before the court—cannot be the subject of an interlocutory appeal. [Citation.] *** [Such orders] do not affect the relationship of the parties in their everyday activity apart from the litigation ***." (*In re A Minor* (1989), 127 Ill. 2d 247, 261-62.)

One common factor running through the cases holding that an order possesses sufficient injunctive qualities so as to render it immediately appealable as of right is that the order impinges upon or restrains a party's rights external to the litigation. For example, in *Minor*, the order had the effect of abridging the appellee's first amendment rights. In *Notaro*, the order denying defendant's motion to compel arbitration had the effect of denying defendant a right to a remedy.

█ In view of these principles, we conclude that the second part of the June 24 order is not in substance an order granting injunctive relief. Rather, it is more properly characterized as an order entered for the purpose of regulating the administrative and procedural details of the litigation. Notwithstanding the introductory language in the December 2 order, the June 24 order merely instructed the parties to submit a plan for appraisal and arbitration. It did not operate to impair any real or supposed rights of the parties outside the bounds of the litigation. Its sole effect was to regulate the conduct of the parties with respect to the progress of the litigation at hand. In sum, the second part of the order did not possess the injunctive-like quality sufficient to bring it within the ambit of Supreme Court Rule 307.

Similarly, although the December 2 order recites a detailed plan for the rearbitration of the property values and necessarily contemplates further arbitration, we conclude that it does not possess the injunctive-like qualities necessary to make it immediately appealable as of right under Supreme Court Rule 307. The order merely regulates the procedural details of the arbitration, and it does not affect the rights of the parties beyond the litigation. Additionally, the rationale distinguishing the December 2 order from the order in *Notaro* applies equally as well in this context. The December 2 order was not entered

in response to a party's motion to compel where one party has challenged the arbitrability of the dispute; rather, it was entered consistent with the parties' earlier voluntary submission to arbitration. *Cf. Johnson v. Baumgardt* (1991), 216 Ill. App. 3d 550, 556-57.

Moreover, even if the December 2 order were immediately appealable as of right under Rule 307, the issue on review would have been limited to that aspect of the order alleged to compel arbitration. (See *Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 1151 ("An appeal under Rule 307 does not open the door to a general review of all orders entered by the trial court up to the date of the order that is appealed").) This court, therefore, would not have had jurisdiction, at the time of the entry of the order, to reach the issue of the vacatur of the original arbitration.

In the interest of completeness, it is still necessary to consider further whether this court had jurisdiction to reverse that part of the circuit court's order which vacated the original arbitration award. As noted above, the first part of the June 24 order vacating the arbitration award was a nonfinal order. Additionally, that portion of the order was not immediately appealable as of right under Rule 307. Crow contends that the circuit court's orders were not ripe for certification until all the elements of relief for its June 16, 1988, breach finding were concluded on November 22, 1989, and that its appeal from that order on December 22, 1989, was properly brought pursuant to Supreme Court Rule 304 (see 134 Ill. 2d R. 304).

 ██ It is well established that "an order remains interlocutory, with regard to its appealability, only so long as no final order has been entered. Once a final order is entered, all prior nonfinal orders become appealable." (*In re E.L.* (1987), 152 Ill. App. 3d 25, 30, citing *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433.) Although the record does not contain copies of the orders entered between December 2, 1988, and November 22, 1989, the transcripts of proceedings for December 2, 1988, and August 25, 1989, reflect that various issues pertaining to the vacatur of the original arbitration award remained unresolved. It does not appear that until the entry of the November 29, 1989, order that all of the issues relating to the June 24 order vacating the original arbitration were resolved. Although certainly not dispositive in a determination of finality, the express language of the November 22 order reveals that issues with regard to the June 24 order remained unresolved until that date. The order expressly stated that "upon entry of this order (and the [separate] agreed order) all issues arising from [Hamilton Partners'] July 22, 1987, Emergency Motion and the Court's rulings pertaining

thereto will have been disposed of." We conclude, therefore, that the June 24 order vacating the original arbitration award did not achieve the requisite degree of finality until the entry of the November 22 order which fixed, among other things, the values of the vacant properties.

Additionally, because the November 22 order did not dispose of all the remaining issues in the case, it was necessary for the order to contain an express written finding that there was no just reason for delaying enforcement or appeal (see 134 Ill. 2d R. 304(a)), thus rendering the order appealable as of that date. An examination of the order reveals that it contained the requisite language and that it tracked the language expressly stated in the rule as required by this court (see *Arachnid, Inc. v. Beall* (1991), 210 Ill. App. 3d 1096, 1102).

From the foregoing analysis, we conclude that Crow's filing of its notice of appeal on December 19, 1989, properly invoked the subject-matter jurisdiction of this court to review that portion of the trial court's order entered June 24, 1988, *nunc pro tunc* June 16, 1988, vacating the original arbitration award. Additionally, we note that this conclusion is consistent with our earlier opinion. First, our decision not to expressly state our basis for acquiring appellate jurisdiction does not permit the conclusion that this court failed to consider it. Second, the dispositive issue in the first appeal related to the vacatur of the original arbitration. Third, even assuming, *arguendo*, that the second portion of the June 24 order was immediately appealable as of right, the opinion does not address the issue of the propriety of the June 24 and December 2 order in the context of "compelling arbitration"; rather, its focus is upon the vacatur of the original arbitration award. Furthermore, notwithstanding our earlier conclusion, the language of the mandate vacating the trial court's subsequent orders in connection with the rearbitration does not lend itself to the conclusion that this court, in the first appeal, exercised its jurisdiction to consider the orders entered in connection with the rearbitration. It would only follow as a logical matter, of course, that once the order vacating the original arbitration was reversed, any subsequent orders entered relative to the rearbitration would have to be vacated, because allowing them to stand would be in direct conflict with the order of reversal.

Crow next contends that Hamilton Partners' alleged attempt to ignore and avoid this court's decision in the prior appeal amounts to a frivolous misuse of the appellate process warranting the imposition of sanctions. Hamilton Partners respond that sanctions are inappropriate

because their appeal here was justified in view of the authority it presented in support of its position.

Supreme Court Rule 375(b) vests this court with the power to impose sanctions for the prosecution of a frivolous appeal. (See 134 Ill. 2d R. 375(b).) The rule states, in part:

> "If, after consideration of an appeal, it is determined that the appeal itself is frivolous, or that an appeal was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting the appeal is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." 134 Ill. 2d R. 375(b).

*Kennedy v. Miller* (1990), 197 Ill. App. 3d 785, 788-89.

 In light of the complexity and novelty of the procedural and jurisdictional questions presented, and the absence of directly controlling case law, it is our opinion that the imposition of sanctions would be inappropriate. Although we have unequivocally held that the jurisdiction of this court could not be reviewed by the trial court in a section 2—1401 proceeding, we do not view Hamilton Partners' effort to appeal from the trial court's decision as an unreasonable attempt unwarranted by existing law or done in bad faith for the purpose of needlessly increasing the cost of litigation or causing unnecessary delay. Accordingly, Crow's motion for sanctions is denied.

For the foregoing reasons, we affirm the order of the circuit court of Du Page County denying Hamilton Partners' petition for relief, and we deny Crow's motion for sanctions.

Affirmed.

WOODWARD and GEIGER, JJ., concur.