FIRST DIVISION 
 DECEMBER 16, 1996

No. 1-95-3654

COMDISCO, INC., ) APPEAL FROM THE
 ) CIRCUIT COURT
 Plaintiff-Appellee, ) OF COOK COUNTY.
 )
v. )
 )
THE DUN & BRADSTREET CORPORATION, )
DUN & BRADSTREET COMPUTER LEASING, ) 
INC., and FILLUPAR LEASING )
PARTNERSHIP, ) HONORABLE
 ) JOHN N. HOURIHANE,
 Defendants-Appellants. ) JUDGE PRESIDING.

 PRESIDING JUSTICE CAMPBELL delivered the opinion of the
court:
 Defendants Dun & Bradstreet Corporation (D&B), Dun & Brad-
street Computer Leasing, Inc. (D&BCL), and Fillupar Leasing
Partnership (Fillupar), appeal an order of the circuit court of
Cook County denying their motion to compel arbitration of dis-
putes between defendants and plaintiff Comdisco, Inc. (Comdisco).
 The record on appeal indicates that on March 20, 1995,
Comdisco filed a "Verified Complaint for a Declaratory Judgment
and Other Relief" in the circuit court of Cook County. In this
complaint, Comdisco alleged that on or about September 3, 1991,
it entered into two sale/leaseback transactions with D&B and
Fillupar; given that the agreements used "virtually similar"
language, the complaint refers to the transactions as one. 
Fillupar later came under the control of D&BCL. D&B, who alleg-
edly had a $35.1 million investment in the transaction, approved
the deal on July 17, 1991; the closing occurred on September 3,
1991.
 Fillupar allegedly purchased approximately $185 million
worth of IBM and Amdahl mainframe computers from Comdisco, who
simultaneously leased the equipment from Fillupar on a variety of
terms. For example, both leases provided that Comdisco had the
right to terminate the leases on an "early termination date". In
the event that Comdisco exercised this option, it would pay D&B
the "early termination value" of the equipment. One definition
of the "early termination value" was the "fair market value" of
the equipment on the "early termination date". "Fair market
value" was also defined in the leases. Each lease involved
several categories of IBM and Amdahl equipment; each category had
a different "early termination date."
 Comdisco exercised its early termination rights as to all
categories of equipment on the respective early termination
dates. Subsequently, in June 1992, a dispute arose between the
parties regarding the value of the equipment. Comdisco took the
position that the fair market value should be determined as of
the early termination date as stated in the agreement. D&B took
the position that fair market value should be determined by
assuming that the early termination date was a delivery date,
with the fair market value being determined as of a date 30 to 45
days prior to the termination date, which would represent the
date upon which the parties typically would have agreed upon a
price. Comdisco estimated that D&B's date could result in an
additional four million dollars of exposure. The parties ex-
changed letters in June 1992 and met in July 1992 in an effort to
resolve the dispute, but were not successful.
 In September 1992, the parties exchanged letters regarding a
proposed arbitration of their dispute. A draft of an agreement
to submit the dispute to arbitration was being discussed by the
parties by May 1994. In November 1994, the parties executed an
Arbitration Agreement (Agreement). The first paragraph of the
Agreement reads as follows:
 "1. AGREEMENT TO ARBITRATE. The par-
 ties hereto hereby agree to submit to binding
 arbitration, in accordance with the terms of
 this Agreement, the disputes which have aris-
 en (A) between Fillupar and Comdisco concern-
 ing the amounts, if any, owed by Comdisco to
 Fillupar under the terms of the Equipment
 Leases as a result of Comdisco's exercise of
 its early termination options with respect to
 each category of leased equipment, and (B)
 between Dun & Bradstreet and Comdisco con-
 cerning the amounts, if any, owed by Comdisco
 to Dun & Bradstreet under the Equipment Value
 Certificates."
On November 11, 1994, the parties retained former Judge Nicholas
J. Bua to arbitrate the dispute. 
 The parties conducted discovery in March 1995. D&B alleged-
ly raised claims that it was entitled to a "volume premium" and
an "in-place premium" for the first time during this discovery
period. D&B alleged that these premiums would result in Comdisco
owing an additional $18 million above what Comdisco had already
paid for the equipment.
 Accordingly, Count I of the complaint sought a declaration
that the Agreement was null and void. Count II alleged breach of
contract. Count III alleged a breach of the covenants of good
faith and fair dealing. Count IV alleged that defendants fraudu-
lently induced Comdisco to enter into the Agreement. Count V
alleged that there was no "meeting of the minds" regarding the
Agreement. Count VI sought injunctive relief, staying the
arbitration until the court determined which issues were arbitra-
ble.
 On April 6, 1995, the defendants filed a motion to compel
arbitration pursuant to the Agreement. On May 3, 1995, the trial
court entered an agreed order stating that defendants were not
required to further answer or otherwise plead until the court
ruled on the motion to compel. On October 13, 1995, following
argument on the matter, the trial court entered an order denying
defendant's motion to compel arbitration. The transcript of
proceedings shows that the trial court based its ruling on Counts
IV and V of Comdisco's verified complaint. Defendants filed a
Notice of Appeal on October 24, 1995.
 I
 Initially, Comdisco contends that this court lacks jurisdic-
tion to hear defendants' appeal. In Notaro v. Nor-Evan Corp.
(1983), 98 Ill. 2d 268, 456 N.E.2d 93, the supreme court held
that the denial of a motion to compel arbitration is appealable
under Rule 307(a)(1) because it is akin to a denial of injunctive
relief. Comdisco maintains that while the order states that the
motion to compel arbitration is denied, the substance of the
order is not injunctive because the trial court merely sought to
defer a decision on the merits pending an evidentiary hearing.
 Comdisco relies on Hamilton v. Williams, 237 Ill. App. 3d
765, 776, 604 N.E.2d 470, 478 (1992), for the proposition that
the appealability of an injunctive order is to be determined by
the substance of the action. However, in Hamilton, this court
distinguished Notaro, stating that the order in Hamilton was not
entered in response to a motion to compel arbitration and ad-
dressed the implementation of an agreed arbitration procedure,
rather than the arbitrability of the dispute. Hamilton, 237 Ill.
App. 3d at 777, 604 N.E.2d at 478. The order in this case was
entered in response to the motion to compel arbitration and
addressed the arbitrability of the dispute. Thus, this case is
closer to Notaro than Hamilton.
 Indeed, the Notaro court relied in part on C. Itoh & Co.
(America) Inc. v. Jordan International Co., 552 F.2d 1228 (7th
Cir. 1977), in which the court stated as follows:
 "Itoh's contention that, although ordinarily
 the denial of a stay pending arbitration
 would be appealable, it is not appealable
 where, as here, the district court never
 determined whether there existed a written
 agreement to arbitrate between Jordan and
 Itoh is completely without merit. Whether
 there exists such a written arbitration
 agreement is relevant to the question of
 whether the district court properly denied
 the stay but not to the question of whether
 its order is appealable. C. Itoh, 552 F.2d
 at 1230-31 n.2.
Moreover, where the language of the order appealed from is clear
and unambiguous, it is generally not subject to construction and
cannot be controlled by an alleged intent or purpose not ex-
pressed therein. Governale v. Northwest Community Hospital, 147
Ill. App. 3d 590, 593, 497 N.E.2d 1318, 1320 (1986). The order
in this case unambiguously denies the motion to compel arbitra-
tion. Comdisco also cites various federal cases, but fails to
cite any case stating that federal law controls the appealability
of a state court order denying a motion to compel arbitration. 
Accordingly, this court now turns to the merits of the dispute.
 II
 The sole issue before this court for review as an interlocu-
tory appeal is whether there was a showing sufficient to sustain
the order of the trial court denying the motion to compel arbi-
tration. See Amalgamated Transit Union, Local 900 v. Suburban
Bus Division of the Regional Transportation Authority, 262 Ill.
App. 3d 334, 337, 634 N.E.2d 469, 472 (1994). Defendants also
cite Amalgamated Transit Union for the proposition that where the
trial court determines the case without evidentiary hearings and
without making any findings as to any factual issues, its deci-
sion is reviewable de novo. Amalgamated Transit Union, 262 Ill.
App. 3d at 337, 634 N.E.2d at 472. However, in Amalgamated
Transit Union, this court was faced with a review of an order
granting a motion to compel arbitration without an evidentiary
hearing. In this case, the trial court denied a motion to compel
arbitration without an evidentiary hearing.
 In Farris v. Hedgepeth, 58 Ill. App. 3d 1040, 374 N.E.2d
1086 (1978), the defendants took an interlocutory appeal before
the trial court was able to hold evidentiary hearings on the
arbitrability of the issues in dispute. The Farris court re-
versed and remanded, holding that the Uniform Arbitration Act
contemplated a substantive disposition of a motion to stay
arbitration before a stay order is entered. Farris, 58 Ill. App.
3d at 1044, 374 N.E.2d at 1089.
 This case differs from Farris in two respects. First, this
case involves the denial of a motion to compel arbitration, 
rather than a motion to stay arbitration. However, this is a
difference without a distinction, as the effect on the parties is
substantially similar. Indeed, the effect of the order in this
case was similar to granting plaintiff the injunctive relief 
sought in Count VI of its complaint without requiring plaintiff
to show the general legal prerequisites for injunctive relief.
 Second, Farris arose under the Uniform Arbitration Act,
whereas the agreement in this case states that it is to be
governed by the Federal Arbitration Act (9 U.S.C.  1 et seq.
(1970)). However, section four of the Federal Arbitration Act,
which defendants cited in their motion to compel arbitration,
provides in part that
 "If the making of the arbitration agreement
 *** be in issue, the court shall proceed
 summarily to the trial thereof." 9 U.S.C. 
 4 (1970).
Section 2(a) of the Uniform Arbitration Act, as adopted in
Illinois at the time Farris was decided, provided in part that
 "if the opposing party denies the existence
 of the agreement to arbitrate, the court
 shall proceed summarily to the determination
 of the issue so raised and shall order arbi-
 tration if found for the moving party, other-
 wise, the application shall be denied." Ill.
 Rev. Stat. 1975, ch. 10, par. 2(a), quoted in
 Farris, 58 Ill. App. 3d at 1042-43, 374
 N.E.2d at 1088.
This same language remains in section 2(a) to this day. 710 ILCS
5/2(a) (1994). Thus, Farris does not conflict with the federal
law on this particular point.
 Of course, our conclusion that the portions of the statutes
quoted above are basically similar should not be misinterpreted
as holding that the two statutes are identical in all respects. 
For example, it is far from clear that section four of the
Federal Arbitration Act applies to state court proceedings. See,
e.g., Volt Information Sciences, Inc. v. Board of Trustees of
Leland Stanford Junior University, 489 U.S. 468, 476-77 & n.6,
103 L. Ed. 2d 488, 498-99 & n.6, 109 S. Ct. 1248, 1254 & n.6
(1989); Southland Corp. v. Keating, 465 U.S. 1, 16 & n.10, 79 L.
Ed. 2d 1, 15 & n.10, 104 S. Ct. 852, 861 & n.10 (1984); Moses H.
Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1,
25 & n.35, 74 L. Ed. 2d 765, 786, & n.35, 103 S. Ct. 927, 942 &
n.35 (1983). It is clear, however, that the Federal Rules of
Civil Procedure, which are expressly mentioned in section four of
the Federal Arbitration Act, "do not apply in such state-court
proceedings." Southland Corp., 465 U.S. at 16 & n.10, 79 L. Ed.
2d at 15 & n.10, 104 S. Ct. at 861 & n.10. Thus, state proce-
dural law (including Farris) is controlling in this case. See
also Nissen, The Federal Takeover of Arbitration Law, 83 Ill.
B.J. 584, 586-87 (1995).
 In sum, the trial court erred in denying the motion to
compel arbitration without ruling on the arbitrability of the
dispute. Absent such a ruling, there is not a showing sufficient
to sustain the denial of the motion. On remand, the court "shall
proceed summarily to the determination of the issue." Generally,
a "summary proceeding" may be defined as 
 "a civil or criminal proceeding in the nature
 of a trial conducted without the formalities
 (as indictment, pleadings, and a jury) re-
 quired by the common law, authorized by stat-
 ute, and used for the speedy and peremptory
 disposition of some minor matter." Webster's
 Third New International Dictionary (1981) at
 2289.
Although the entirety of the dispute in this case might not
normally be thought of as a "minor matter," the issue of arbitra-
bility is far more narrow. The summary proceeding in this case
is not merely authorized by statute, but is mandated by statute. 
The issue of whether a dispute is or is not within the scope of
an arbitration clause should be determined at the earliest
possible moment. Farris, 58 Ill. App. 3d at 1043, 374 N.E.2d at
1088.
 For all of the aforementioned reasons, the judgment of the
circuit court of Cook County is reversed, and the case remanded
for further proceedings consistent with this opinion.
 Reversed and remanded.
 BUCKLEY, J., and WOLFSON, J., concur.