*In re* MARRIAGE OF JACQUELINE M. PERDUE, n/k/a Jacqueline Wesstrom, Petitioner-Appellee, and ROBERT J. PERDUE, Respondent-Appellant.

Second District   No. 2—86—1049

Opinion filed October 19, 1987.

128

Nemanich & McKeown, of Waukegan (Dennis J. McKeown, of counsel), for appellant.

C. Kenneth Blood, of Shearer, Blood, Agrella & Boose, of St. Charles (Kenneth L. Kaergard, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, Robert J. Perdue, and petitioner, Jacqueline Perdue, n/k/a Jacqueline Wesstrom, were divorced in June 1980. They had entered into a separation agreement which was incorporated into the dissolution judgment and which purported to specify petitioner's interest in respondent's employer's profit sharing trust (the trust). Respondent appeals from the construction given the agreement by the circuit court of Lake County.

In addition to being an employee with a vested interest in the trust, respondent is a partial owner of the employer and was one of two trustees of the trust. In January 1984, respondent and his co-trustee decided to terminate the trust and to distribute the funds pro rata to the participating employees, including respondent. Upon learning of the proposed termination of the trust, Jacqueline filed a petition seeking reformation of the agreement to allow immediate disbursement to her of her portion of respondent's interest in the trust. After an evidentiary hearing, the trial court entered an order on March 12, 1984, finding that the provision did not accurately reflect the parties' agreement and reforming it to give petitioner a 50% interest in the trust as of the date of dissolution, plus interest and earnings attributable to her portion of the fund since that date, but not any portion of those attributable to subsequent contributions by respondent's employer. The court also held that petitioner's portion became payable when the funds were made available to respondent, and that each party was to be responsible for his or her own income taxes on receipt of the funds. Respondent did not immediately comply with the order, however, and on October 5, 1986, after a hearing on peti-

tioner's motions to compel payment, the trial court assigned a dollar amount to petitioner's share of the trust, deducted the payments already made to her, and ordered immediate payment of the balance due. Respondent then filed this appeal.

The contested provision states:

> "HUSBAND'S PROFIT SHARING TRUST: Upon the Husband's retirement or death, whichever shall first occur, the Wife shall receive fifty percent (50%) of a certain portion of the net distribution of the proceeds of the vested equity of the Husband in the Foster Supply Company Employees' Profit Sharing Trust ('net' being the amount remaining after the payment of Federal and State taxes thereon), with the Wife's portion to be arrived at by using the following formula:
>
> > First, it shall be determined what proportion his contributions made to the trust prior to the entry of a Judgment of Dissolution of Marriage bear to his total contributions at the time distribution is made;
> >
> > The resulting proportion will then be applied to the amount of the net distribution made to the Husband in order to determine the portion thereof that will be subject to the Wife's 25% interest."

We note initially that there is a presumption that a written contract is the accurate reduction to writing of the agreement reached by the parties. (*Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 800.) Reformation of a contract is therefore only permitted where the plaintiff demonstrates by clear and convincing evidence that, due to a mutual mistake of fact, among other reasons, the writing does not accurately reflect the agreement reached. (See, *e.g.*, *National Ben Franklin Insurance Co. v. Davidovitch* (1984), 123 Ill. App. 3d 88, 91; *Beynon Building Corp. v. Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 765.) If a mutual mistake is proved, reformation permits amending the contract to conform it to the parties' actual agreement. *National Ben Franklin Insurance Co. v. Davidovitch* (1984), 123 Ill. App. 3d 88, 91.

The parties agree that inclusion of the term "25%" in the second subparagraph of the disputed provision was a typographical error and that the term should have been "50%." They also agree that respondent never made contributions to the trust, that all contributions were in fact made by respondent's employer, and that the references in the first subparagraph to "his contributions" should have been to the employer's contributions. Neither party contests the trial court's implicit amendment of those terms. Respondent contends, however, that the

trial court erred in additionally amending the contract: (1) to require payment to petitioner prior to respondent's death or retirement; (2) to give petitioner one-half of the gross (before tax), rather than the net, disbursement; and (3) to award petitioner a share of the trust's post-dissolution interest and earnings.

The agreement provides that petitioner shall receive her portion of the trust at respondent's death or retirement, whichever occurs first. However, petitioner testified that at the time the parties entered the agreement, she believed she would receive her share of the trust funds when respondent received his. She said the parties never considered the possibility of a disbursement to him prior to his death or retirement, because he had been trying to withdraw his funds from the trust for years without success. Respondent also testified that the parties simply did not anticipate a disbursement of trust funds prior to his death or retirement. He argues, however, that the plain language of the agreement should control on this issue. We disagree.

It is readily apparent from the testimony that the parties made reference to respondent's death or retirement only because they erroneously believed that the funds would be first available to respondent or his estate on the earlier of those two occurrences. Respondent's eventual death or retirement had no other significance for the parties with respect to this issue. They clearly did not contemplate giving respondent the use of petitioner's share of the trust funds in the interim in the event of an earlier disbursement, and the contract therefore does not accurately reflect their intentions. We find no error in the trial court's reformation of the agreement to require immediate disbursement to petitioner.

We cannot conclude, however, that petitioner has similarly met her burden of proof with regard to the taxation issue. The settlement agreement provides that petitioner is to receive 50% of a "certain portion" of the husband's eventual "net" distribution from the trust. It defines "net" as the amount remaining after Federal and State taxes have been paid. The "certain portion" of which petitioner is to receive 50% is apparently that portion of the ultimate distribution attributable to contributions made during the parties' marriage. Respondent testified that the parties originally executed a different version of the settlement agreement which gave petitioner only 25% of that portion. When the trial court found the original agreement unconscionable, however, the parties revised it to allocate 50% to petitioner. Petitioner testified that no one mentioned tax consequences to her and that the revised agreement was shown to her only moments before the parties presented it to the trial court for approval. Re-

spondent, however, testified that he understood the agreement to require petitioner's share to be calculated only after deducting from the gross distribution the amount of Federal income tax he would have to pay on it.

▪ Petitioner's testimony that no one mentioned tax consequences to her is insufficient to establish by clear and convincing evidence that the term was included as the result of a mutual mistake. Her testimony falls far short of establishing that taxes were not considered during the parties' negotiations. And petitioner's limited opportunity to review the document is irrelevant in the absence of testimony or evidence in the record to show that the disputed language did not also appear in the original agreement. In addition, her testimony was directly contradicted by respondent, who indicated the term was intentionally included. To warrant reformation of a contract in the absence of fraud, any mistake in drafting it must have been mutual. (See *Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 800.) We conclude that the evidence was entirely insufficient to establish that the mistake, if any, in including the reference to taxes, was mutual. We note that this is not a situation where the disputed term is inherently inconsistent with other contract terms (see, *e.g.*, *Beynon Building Corp. v. National Guarantee Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 765) and that the agreement itself states that attorneys for both parties participated in drafting the document. We therefore conclude that petitioner has not established that the agreement's reference to Federal and State taxation was included by mutual mistake of the parties.

▪ We also cannot conclude that the trial court's decision to ignore the taxation reference was a legitimate interpretation of an ambiguous contract. The rules generally applicable to construction of a contract also apply to the construction of a property agreement, and it is the court's function to interpret the agreement in a reasonable manner and to ascertain the intent of the parties. (See, *e.g.*, *Waggoner v. Waggoner* (1978), 66 Ill. App. 3d 901, 904; *Benninghoven v. Benninghoven* (1976), 39 Ill. App. 3d 286, 288.) Expert testimony at trial established that the trust itself pays no Federal or State taxes. Interpreting the contract's taxation language as a reference to nonexistent Federal and State taxes on the trust itself would render the taxation language meaningless. In construing a contract, a court must give meaning and effect to every clause and term and disregard none as meaningless or surplus. (See *Bank of Homewood v. Sjo* (1983), 113 Ill. App. 3d 179, 183; *Spircoff v. Spircoff* (1979), 74 Ill. App. 3d 119, 127.) In addition, such a construction disregards the only testimony by ei-

ther of the parties as to their intent with regard to the term—respondent's statement that he believed it provided for deduction of his tax liability before evaluating petitioner's interest. We conclude that the trial court erred in ordering each party to bear his or her own tax consequences.

■ As a practical matter, however, we cannot assign a dollar amount to respondent's tax liability caused by the distribution based on the testimony of respondent's expert, Paul Kamschulte. Kamschulte, a certified public accountant, made two estimates of respondent's 1984 Federal income taxes—one based on respondent's estimated income including the gross distribution from the trust fund ($206,236), and one disregarding the trust distribution entirely. He concluded that the difference between the two estimates was Federal tax attributable to the trust distribution. Kamschulte's calculations, however, were based only on respondent's estimated income, and he ignored respondent's testimony that he had already "rolled over" $84,600 of the disbursed funds, tax free, into an Individual Retirement Account (IRA). Kamschulte's tax figures are therefore inflated and would result in too low a "net" distribution figure. In addition, respondent did not make immediate or complete payments to petitioner of her share of the trust proceeds, and the record does not disclose in which tax year those distributions were made or whether they were reported as income by the petitioner, by respondent, or by both. The trial court directed each party to be responsible for his or her own taxes. If petitioner in fact reported as income and paid taxes on the funds disbursed to her, equity will not permit us to require her to additionally reimburse a portion of the taxes paid by respondent. (*Cf. Espadron v. Davis* (1944), 385 Ill. 304, 310 (noting that a reviewing court will not take action which, when combined with a portion of the trial court's decision which was not appealed, will substantially prejudice the appellee).) We therefore direct the trial court to conduct a hearing to determine how the parties reported the disbursements for income tax purposes. If, and to the extent that, petitioner did not report the disbursements as income, the court shall require her to reimburse respondent for 50% of the taxes he actually paid on the distribution. (The 50% figure is necessitated by our affirmance of the trial court's allocation of the funds below.) We note that because the agreement requires petitioner's share to be evaluated only after the "net" distribution has been determined (*i.e.*, after the taxes have been paid), petitioner need only pay 50% of respondent's actual additional tax liability, and no consideration need be given to what proportion of those taxes was actually attributable to her share of the funds.

We next turn to respondent's contention that the trial court erred in awarding petitioner a share of the trust's post-dissolution interest and earnings. The disputed provision includes a formula for determining petitioner's share of the "net" distribution. Respondent argues that the formula can be given effect by replacing the references to "his contributions" with references to his employer's contributions, and by replacing "25%" with "50%." We agree, but conclude that the result required by the reasonable implementation of that adjusted formula is precisely that reached by the trial court.

■ Respondent argues that the adjusted formula requires using a fraction—the numerator being the "balance in fund as of date of Judgment" and the denominator being "balance in fund as of final account"—and multiplying that fraction by the "net" distribution to arrive at the amount in which petitioner has a 50% interest. The adjusted formula, however, makes no reference whatsoever to the balance held in the fund at any time. It compares only predissolution *contributions* with *total contributions*. It is uncontroverted that respondent's employer contributed only $55 after the dissolution of the parties' marriage. The predissolution contributions and the total contributions are therefore essentially equal, entitling petitioner (with the exception of the employer's subsequent $55 contribution) to a full 50% interest in the "net" distribution. The trial court's March 12, 1984, order, awarding petitioner 50% of the dissolution date trust balance plus interest and earnings on that portion, but excluding subsequent employer contributions, is entirely consistent with that result.

We therefore conclude that the trial court erred in disregarding the agreement's reference to Federal and State taxation, but affirm its decisions in all other respects. The judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded with directions.

Affirmed in part; reversed in part and remanded.

REINHARD and NASH, JJ., concur.