*In re* MARRIAGE OF MAGNUS AGUSTSSON, Petitioner and Counter-defendant-Appellee, and ANN AGUSTSSON, n/k/a Ann Agustsson Mathers, Respondent and Counterplaintiff-Appellant.

Second District    No. 2—91—0134

Opinion filed January 8, 1992.

O'Halloran, Kosoff & Miller, of Chicago, and John O. Demaret and Patricia A. Heeney, both of John O. Demaret & Associates, of Northbrook (David A. Belofsky, of counsel), for appellant.

Williams & McCarthy, P.C., of Rockford, and Stephen E. Balogh, of Williams & McCarthy, P.C., of Oregon (Carol H. Hallock, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Ann Agustsson, respondent, appeals from an order entered by the trial court, vacating a judgment for dissolution of her marriage and accompanying marital settlement agreement. We affirm.

Magnus Agustsson, petitioner, filed a petition for dissolution of marriage from his wife, Ann. On March 22, 1990, the trial court entered a judgment for dissolution which incorporated a marital settlement agreement. The agreement provided for a "fifty-fifty" distribution of a pension owed to Magnus by his former employer,

SwedishAmerican Hospital. The settlement agreement provided for distribution of the pension as follows:

"7. Husband acknowledges that he is a beneficiary of and a participant in the Swedish American Corporation Retirement Plan (the 'plan') which plan has been heretofore sponsored, in whole or in part, by husband's former employer, Swedish American Hospital. Husband further acknowledges that he has since February 1, 1989 received monthly payments from said plan in the amounts of $1,729.13. Husband and wife have been notified by Swedish American Hospital and understand that the plan has been terminated and that husband is entitled to receive an accrued benefit, payable in lump sum, in the amount of $211,936.20. The husband covenants to make written request to the plan administrator for lump sum distribution of the accrued plan benefit, which lump sum distribution the wife shall consent to in writing upon the condition of and in partial consideration for the following division of the lump sum payment from the plan:

A. Wife shall receive an amount equivalent to 50% of the accrued benefit plus an amount equal to 50% of the monthly payments received by husband since December 19, 1989, *which shall be computed prior to the deduction or payment of any taxes due on the lump sum distribution from the plan,* and which amount shall in no event be less than $108,561.80.

B. Husband shall authorize and direct the plan administrator and, if necessary, the Swedish American Hospital, to deduct from the lump sum distribution of the accrued plan benefit all amounts due wife under paragraph 7A hereof; and

C. Husband shall receive the balance of the lump sum distribution of the accrued plan benefit due him from the plan *after deduction of the amount specified by paragraphs 7A and B* hereof." (Emphasis added.)

Shortly after the judgment was entered, SwedishAmerican Hospital filed a petition to dissolve a prior injunction prohibiting distribution of the pension funds. The hospital specifically requested that the pension be distributed in a single check to Magnus, to ensure compliance with section 206(a) of the Employee Retirement Income Security Act (ERISA) (29 U.S.C. §1056(a) (1990)). Although Magnus argued that payment in one check would shift the entire burden of income tax payment to the recipient of the check, on March 29, 1990, the trial court modified the injunction "to allow Swedish American Hospital to deliver its check in the amount of the lump

sum distribution of the accrued plan benefit due Magnus Agusts-son." The order also directed Magnus to negotiate a check to Ann in accordance with paragraph 7A of the marital settlement agreement. Magnus objected to disbursement because the judgment for dissolution did not constitute a qualified domestic relations order (QDRO) (29 U.S.C. §1056(d)(3) (1990)) and requested leave to modify, to which the court responded, "[t]hat motion should be filed, but that is not a basis on which I should delay signing the order which [lifts the injunction]."

Consequently, Magnus filed a motion to amend the judgment for dissolution pursuant to section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203), so that it would expressly reflect a QDRO, thereby assessing the tax burden according to the share of the pension each party received. However, on April 13, 1990, the court denied Magnus' motion to amend "in its entirety." The apparent basis for the denial was that the written terms of the marital settlement did not provide for a QDRO. When Magnus' counsel stated that it was part of the oral agreement of the parties, the court responded that, if "it isn't in [the agreement], it isn't in there. That's the end of it." Next, the following interchange occurred:

"MS. HALLOCK [counsel for Magnus]: Are you saying the Motion to Vacate is more appropriate? I would be filing a motion to vacate on those grounds.

THE COURT: Maybe.

MS. HALLOCK: Okay.

THE COURT: I can't say for sure. I can't bar you from filing such a Motion. A motion to Amend as for now, I think, should be denied. Heard and denied."

Accordingly, Magnus filed a motion to vacate the judgment for dissolution on April 20, 1990, and an amended motion to vacate on April 25, 1990. He alleged that the parties agreed and intended that each party pay taxes on the amount of the pension received. Magnus also asserted that interpreting the agreement so that he must bear the entire tax burden amounts to a mutual mistake of fact, thereby furnishing grounds for vacation. Finally, on April 30, 1990, Magnus filed a motion to vacate the order of March 29, 1990, which directed Magnus to pay Ann according to the terms of the agreement. The motion asserted that the trial court substantially altered the terms of the marital settlement agreement by allowing the hospital to issue a single check, since the agreement clearly called for the issuance of separate checks.

The trial court did not initially decide the motions to vacate, because it considered the terms of the agreement ambiguous. Instead, it ordered an evidentiary hearing to determine the intent of the parties at the time the agreement was executed. Based on the evidence presented at the hearing, the trial court found that the parties had different understandings of the terms of the marital settlement agreement, which amounted to a "mutual mistake of fact." The court also found that the valuation of the marital estate and the tax consequences of the distribution were not taken into consideration in entering the judgment for dissolution. Accordingly, on January 3, 1991, the court vacated the judgment for dissolution and dismissed the motion to vacate the March 29, 1990, order as moot. On January 29, 1991, Ann filed a timely notice of appeal from the order vacating the judgment for dissolution and accompanying marital settlement agreement.

Prior to considering the merits of an appeal, the appellate court is bound to inquire whether it has jurisdiction to hear the appeal. (*Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440; *Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 539; *Bell Federal Savings & Loan Association v. Bank of Ravenswood* (1990), 203 Ill. App. 3d 219, 223.) An appellate court's jurisdiction is confined to reviewing appeals from final orders or judgments (134 Ill. 2d Rules 301, 303, 304), unless the particular judgment or order falls into an enumerated category permitting interlocutory appeals. (See 134 Ill. 2d Rules 307, 308; *Sutherland v. Norbran Leasing Co.* (1988), 180 Ill. App. 3d 95, 96-97.) A final judgment terminates the litigation on the merits of the case and determines the ultimate rights of the parties. If affirmed, the only action remaining is to proceed to its execution. *Sutherland v. Norbran Leasing Co.* (1988), 180 Ill. App. 3d 95, 97.

In this case, Ann appeals from an order vacating the judgment for dissolution. However, an order vacating a judgment is not final and consequently not appealable, because the merits of the case are still pending. (*Williams v. A.E. Staley Manufacturing Co.* (1980), 80 Ill. App. 3d 981, 985; *Petersen Brothers Plastics, Inc. v. Ullo* (1978), 57 Ill. App. 3d 625, 628; *William Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1975), 28 Ill. App. 3d 573, 576.) However, Ann contends that this appeal is premised on the appellate court's mandatory jurisdiction over void orders. Although Ann correctly states that void orders are appealable and can be attacked at any time (see *People ex rel. McGraw v. Mogilles* (1985), 136 Ill. App. 3d 67, 71; *Petersen*, 57 Ill. App. 3d at 628-29; *Under-*

*wood v. Yellow Cab Co.* (1971), 131 Ill. App. 2d 449, 452), the order vacating the judgment in this case is not void.

■■ A court loses jurisdiction over a matter once 30 days have passed if during that time neither party takes any legally proper action, such as the filing of a post-judgment motion, which delays the running of the 30-day period. (*People ex rel. McGraw v. Mogilles* (1985), 136 Ill. App. 3d 67; *Allstates Tool Corp. v. Arachnid, Inc.* (1988), 177 Ill. App. 3d 573, 579.) Section 2—1203 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203) specifies that a motion to modify or vacate a judgment qualifies as a post-judgment motion under Supreme Court Rule 303(a)(1). (134 Ill. 2d R. 303(a)(1); see also *Brock v. Police Board* (1990), 205 Ill. App. 3d 1035, 1040.) In this instance, the time for appeal commences to run from the date the motion is disposed of on the merits. *Bell Federal Savings & Loan Association v. Bank of Ravenswood* (1990), 203 Ill. App. 3d 219, 224.

■■ Citing *Benet Realty Corp. v. Lisle Savings & Loan Association* (1988), 175 Ill. App. 3d 227, Ann concludes that after Magnus' motion to amend the judgment was denied, his only recourse was to file an appeal, because the trial court was divested of jurisdiction to hear any additional post-judgment motions, including his motion to vacate. We disagree. *Benet* concerned appellate jurisdiction rather than original jurisdiction in the trial court. In *Benet*, a judgment was entered on both the plaintiff's and defendant's claims following a bench trial. Thereafter, defendant presented a post-judgment motion which was denied. Still within 30 days of the judgment, defendant filed another post-judgment motion, which was also denied, and defendant filed its notice of appeal. The *Benet* court dismissed the *appeal* for lack of jurisdiction, holding "that the filing of a second post-judgment motion, attacking the final judgment, filed after denial of the first post-judgment motion but within 30 days of the final judgment, which only repeats arguments *** that could have been raised in the first motion, is not a 'timely' post-trial motion as that word is used in Rule 303(a). The second post-judgment motion by the same party cannot serve to extend the time for filing a notice of appeal." *Benet*, 175 Ill. App. 3d at 231-32.

The holding of *Benet* was apparently premised on language contained in the supreme court case of *Sears v. Sears* (1981), 85 Ill. 2d 253. (See *Benet*, 175 Ill. App. 3d at 231.) However, *Sears* actually held that "[i]n the interests of finality, and of certainty and ease of administration in determining when the time for appeal begins to run, we reaffirm the rule of *Deckard* that successive post-judgment

motions are impermissible when the second motion is filed more than 30 days after the judgment or any extension of time allowed for the filing of the post-judgment motion." *Sears*, 85 Ill. 2d at 259, citing *Deckard v. Joiner* (1970), 44 Ill. 2d 412 (where the court interpreted a second post-trial motion as supplementary rather than successive).

In *Benet*, the appeal was from the *denial* of relief on a second post-judgment motion. In this case, however, defendant appeals from an order *granting* the second post-judgment motion, when the first post-judgment motion was denied without a proper hearing. Consequently, the first time defendant even contemplated an appeal was after disposition of the second post-judgment motion. Therefore, the rationale of *Sears*, that successive post-judgment motions effectually abrogate the provisions of the Code by extending the time for filing a notice of appeal, is inapplicable to the facts of the instant case, since the second post-judgment motion did not extend the time for which *this party* could file a notice of appeal.

Furthermore, jurisdiction to hear the appeal in both *Benet* and *Sears* was premised on Supreme Court Rule 303(a) (134 Ill. 2d R. 303(a)). The rule states that a notice of appeal must be filed within 30 days of the entry of the final judgment appealed from, or, "if a timely post-trial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending post-trial motion." (134 Ill. 2d R. 303(a)(1).) Although the term "disposing" could reasonably be interpreted as encompassing both grants and denials, we have found no case law discussing appeals from nonfinal judgments in the context of Supreme Court Rule 303. One explanation is that a judgment leaving the merits of the case pending is effectually an order granting a new trial, and appeals from such orders are governed by Supreme Court Rule 306. Therefore, Rule 303 only applies to appeals from final judgments, because under these facts, any other interpretation would render Rule 306 a nullity.

By applying *Sears* and *Benet* to the facts of this case, Ann implicitly assumes that the order *granting* Magnus' motion to vacate the judgment for dissolution is a final judgment, which is an erroneous conclusion. Furthermore, her assertion that the order vacating the judgment for dissolution was entered without jurisdiction lacks merit, because the authority Ann cites for the proposition that circuit courts "have no authority to hear successive post-judgment motions" is inapplicable to the facts of the instant case. (*B-G Associates, Inc. v. Giron* (1990), 194 Ill. App. 3d 52, 57; see also *Village*

*of Island Lake v. Parkway Bank & Trust Co.* (1991), 212 Ill. App. 3d 115, 122-23; *Cronin v. Altman* (1981), 101 Ill. App. 3d 432, 434.) Such language is premised on the rationale that successive post-judgment motions cannot be maintained because they extend the time for a notice of appeal from a final judgment pursuant to Supreme Court Rule 303, rather than for the proposition that circuit courts lack jurisdiction to hear such motions.

Because the vacation necessitates a new prove up on the marital settlement agreement, this appeal should have been properly brought pursuant to Supreme Court Rule 306 (134 Ill. 2d R. 306), which states that such an appeal may be taken "only on the allowance by the Appellate Court of a petition for leave to appeal." (134 Ill. 2d R. 306(a)(1).) Although Ann's counsel stated that the order "which vacated the judgment and in effect set this case for further hearing is in the nature of an order granting a new trial," a search of the record reveals that a petition for leave to appeal has not been filed. In this instance, judicial economy dictates that we exercise our discretion and hear this appeal on its merits pursuant to Supreme Court Rule 306 by treating the notice of appeal and arguments raised in the briefs in lieu of a petition for leave to appeal.

■ On a motion filed within 30 days of its entry, a circuit court may vacate a final judgment upon reasonable terms and conditions. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203.) Vacating a judgment is a matter within the sound discretion of the trial court and will not be regarded as an abuse of discretion when doing so promotes substantial justice between the parties. (*Espedido v. St. Joseph Hospital* (1988), 172 Ill. App. 3d 460, 466.) However, the movant carries the burden of establishing sufficient grounds to vacate. *Kosten v. St. Anne's Hospital* (1985), 132 Ill. App. 3d 1073, 1080.

In an effort to sustain the burden of proof in this case, an evidentiary hearing was held to determine "whether the parties *** ever thought about the tax consequences before the drafting of this meticulous Settlement Agreement." Magnus testified that he and Ann agreed to a "fifty-fifty split" of the lump sum distribution of the pension and that the possibility of assuming all of the tax liability was neither mentioned to him during negotiations nor at the hearing when the court approved the agreement. Contrary to Magnus, Ann testified that she interpreted the agreement such that she would not pay taxes on her share of the distribution.

The judge, however, stated that he had "a very difficult time believing it was the intent of the parties that one get $108,000, [and] the other get $25,000. I don't believe that for one minute."

Consequently, he entered an order vacating the judgment for dissolution on the basis that neither the written agreement nor the evidence presented at the hearing reflected a meeting of the minds concerning the tax consequences of the pension. Accordingly, the court found that the lack of an agreement amounted to "a mutual mistake of fact," which justified vacation.

■ We agree with the trial court's finding that the record adequately supports the vacation such that granting the motion was not an abuse of discretion. A marital settlement agreement is a contract subject to the same rules of construction of any other contract. It is the court's function to interpret the agreement in a reasonable manner and ascertain the intent of the parties. *In re Marriage of Perdue* (1987), 162 Ill. App. 3d 126.

A mistake by the parties at the time of execution of the contract provides grounds for rescission. (See *Cummings v. Dusenbury* (1984), 129 Ill. App. 3d 338, 342-45.) In this case, the trial judge found that both parties were mistaken concerning the tax consequences of the marital settlement agreement. A mutual mistake occurs when an actual good-faith agreement is reached, but, due to error, the contract is written in terms that violate the understanding of both parties. (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 760.) An analysis of the relevant terms of the agreement illustrates that no specific language concerning tax liability was included. Although there is a rebuttable presumption that a written contract is an accurate reduction to writing of the agreement reached by the parties (*Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 800), parol evidence may be used to show the real agreement between the parties when a mistake has been made and the evidence serves to ascertain the original intent of the parties. (*Beynon*, 118 Ill. App. 3d at 760.) Therefore, it was within the judge's discretion to hold an evidentiary hearing to discover the intent of the parties.

The evidence reveals that Ann interpreted the language that she "shall receive an amount equivalent to 50% of the accrued benefit *** which shall be computed prior to the deduction or payment of any taxes due" to mean she will never pay taxes on her share of the distribution. Magnus, however, construed the same language to mean that each party will be responsible for paying taxes on his share should he decide not to roll the amount over into an appropriate retirement fund. We agree with the trial court's finding that there was a mutual mistake of fact.

■ ▌ ▌ Assuming *arguendo* that the mistake concerning the agreement was unilateral, we would still reach the same conclusion. This court has allowed a unilateral mistake to justify rescission of a contract. (See *Cummings*, 129 Ill. App. 3d at 342-45.) As stated by our supreme court, if:

> "[B]y reason of a mistake of fact by one of the parties, not due to his negligence, the contract is different with respect to the subject matter or terms from what was intended, equity will give to such party a remedy by cancellation where the parties can be placed *in statu quo*. The ground for relief is, that by reason of the mistake there was no mutual assent to the terms of the contract." (*Steinmeyer v. Schroeppel* (1907), 226 Ill. 9, 13.)

More recently, the appellate court stated that rescission is a proper remedy for either a unilateral or mutual mistake of fact when the party seeking rescission shows by clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in status quo. *Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 548; see also *S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.* (7th Cir. 1985), 766 F.2d 1089 (applying Illinois law); *John J. Calnan Co. v. Talsma Builders, Inc.* (1976), 40 Ill. App. 3d 62, 65, *rev'd* (1977), 67 Ill. 2d 213, 218, *on remand* (1979), 77 Ill. App. 3d 221; *Santucci Construction Co. v. County of Cook* (1974), 21 Ill. App. 3d 527, 531.

■ It is undisputed that there was a mistake concerning taxation of the pension and that it relates to a material feature of the contract. Although the judge entered no findings concerning unconscionability and the exercise of due care, the evidence illustrates that these elements were met. The agreement states that Ann will receive 50% of the pension which is to be computed prior to computation of taxes. It is reasonable to interpret this language as requiring Ann to pay her own taxes. Since the tax implications were not discussed at the time of execution, there was no error in failing to include a more specific provision in the agreement. Furthermore, if the agreement is not vacated and the court's orders are allowed to stand, there is a very strong possibility that Magnus will be forced to pay both shares of taxes, contrary to his intent and through no fault of his own. This result confers an undue benefit on Ann and amounts to unconscionability. Therefore, we find that the evidence

clearly and convincingly meets the test articulated in *Keller* (180 Ill. App. 3d at 548).

Considering all of the foregoing, we find that the order vacating the judgment for dissolution was not an abuse of discretion. Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.