NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 200021-U

NO. 4-20-0021

FILED
October 29, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| MARY JABUSCH, | ) | Circuit Court of |
|      Petitioner-Appellee, | ) | Sangamon County |
|      and | ) | No. 18D520 |
| LAWRENCE R. JABUSCH, | ) | |
|      Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer M. Ascher, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding respondent's contentions of error were
unsupported by the record presented.

¶ 2    Respondent, Lawrence R. Jabusch, appeals from the trial court's judgment

dissolving his marriage to petitioner, Mary Jabusch. On appeal, Lawrence argues the trial court

erred by (1) entering Mary's proposed judgment of dissolution and associated orders over his

objection, (2) denying his motions to vacate the judgment of dissolution and associated orders, and

(3) excluding Mary's permissive service from the marital portion of her pension. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4    In October 1980, Mary and Lawrence married. No children were born nor adopted

during the marriage. In September 2018, Mary filed a petition for dissolution of marriage. At the time, Mary was 76 years old and Lawrence was 78 years old. In March 2019, Lawrence filed a cross-petition for dissolution of marriage.

¶ 5        On July 16, 2019, Mary filed a final pretrial memorandum. In her memorandum, Mary set forth the several issues for the trial court to review. Mary noted she retired from the State of Illinois in 1991, having been employed with the state since 1965, and had been receiving a monthly pension since that time. Mary proposed she receive the entirety of her monthly pension benefit because she, unlike Lawrence, was ineligible to receive social security benefits. Mary further proposed she receive an award of maintenance or, in the alternative, a disproportionate amount of the marital property, as well as a contribution from Lawrence for the attorney fees she incurred. In an exhibit to her memorandum, Mary listed her pension, generally, as marital property she would receive.

¶ 6        On July 19, 2019, Lawrence filed a position statement. With respect to Mary's pension, Lawrence noted Mary had worked for the State of Illinois from July 1965 to December 1991. Lawrence classified the nonmarital portion of Mary's monthly pension as 68.5% and the marital portion as 31.5%. In support of that classification, Lawrence cited an exhibit, "See Respondent's Demonstrative Exhibit A." That exhibit, however, does not appear in the record as attached to Lawrence's position statement. Lawrence proposed he receive one-half of the marital portion of Mary's monthly pension, "approximately 15%." Lawrence further proposed no maintenance be awarded. He did not address Mary's proposal concerning his contribution for her attorney fees.

¶ 7        On July 30, 2019, the trial court held a hearing where both parties appeared with

their attorneys. After hearing testimony from Mary, the court found grounds for dissolution existed. The court, apparently aware from a discussion off the record indicating the parties had reached a settlement agreement as to all issues, then asked, "who is going to recite the agreement on the record?" Mary's attorney indicated he would recite the agreement. The court admonished the parties to carefully listen to the agreement recited and indicated it would allow Lawrence's attorney to make any corrections or modifications to the agreement following its recitation. The court further indicated it would ask each party a series of questions to assure their understanding of the agreement. The court admonished the parties the agreement, if approved, would be "final" and "no one can change their minds at a later date to ask that it be modified or changed."

¶ 8        Mary's attorney provided a detailed recitation of the agreement. With respect to Mary's pension, Mary's attorney stated, "Mr. Jabus[c]h would receive one half of the marital portion of Mrs. Jabus[c]h's State of Illinois pension pursuant to a [Qualified Illinois Domestic Relations Order (QILDRO)]." Nothing further was recited concerning the amount that constituted the marital portion of Mary's pension. Mary's attorney also stated both parties would waive an award of maintenance and each party would be responsible for their respective attorney fees. Following the recitation of the agreement, Lawrence's attorney asked if Mary's pension was addressed, to which the trial court stated it had and that the pension would be divided evenly "from the date of marriage moving forward." Lawrence's attorney had no other questions. Neither party presented any exhibits or other documents to the court.

¶ 9        The trial court confirmed each party believed the agreement was fair, reasonable, and voluntary. The court also confirmed no other agreements had been reached by the parties. Both parties acknowledged they were requesting the court to accept the agreement as a "final and

complete settlement of all the issues." After its examination, the court "accept[ed] the agreement placed on the record" and instructed the attorneys to prepare the necessary documents. The court set a status hearing for August 26, 2019, in the event it had not received the paperwork prior to that date. A docket entry from that day indicates, "Final settlement agreement outlined on the record."

¶ 10　　　　An August 23, 2019, a docket entry indicates the status hearing was rescheduled "[b]y agreement of counsel" to August 28, 2019.

¶ 11　　　　On August 26, 2019, Mary filed a motion requesting the trial court to enforce the settlement agreement and enter judgment. In her motion, Mary alleged the parties had been unable to agree on and jointly submit a written judgment incorporating the parties' settlement agreement. Specifically, Mary alleged they had been unable to do so because Lawrence continued to seek modifications to the parties' agreement. Mary attached to her motion a proposed judgment for dissolution of marriage, a proposed QILDRO, and a proposed QILDRO calculation order, all of which she believed were consistent with the parties' settlement agreement set forth on the record as well as "*Respondent's Demonstrative Exhibit A* that was provided to [her] prior to trial." Mary scheduled a hearing on her motion to occur at the same time as the August 28, 2019, status hearing and provided notice of such to Lawrence.

¶ 12　　　　On August 28, 2019, the trial court entered Mary's proposed judgment of dissolution, QILDRO, and QILDRO calculation order. Docket entries from that day indicate the judgment and associated orders were signed and the cause was stricken. The judgment indicates it was based, in part, on "the arguments of counsel on August 28, 2019." The record on appeal contains no transcripts, bystander's report, or agreed statement of facts from any hearing.

- 4 -

¶ 13 The judgment of dissolution did not award maintenance or attorney fees. With respect to Mary's pension, the judgment provides, in part, as follows:

> "8. Husband shall receive 50% of the marital portion of Wife's monthly pension from the State Employees' Retirement System.
>
> a. Prior to the July 30, 2019[,] hearing in this matter, Respondent had calculated that the marital portion is 31.5%, which was reflected in *Respondent's Demonstrative Exhibit A*. The marital portion appears to have been determined by a fraction, the numerator of which is the number of months of service during the marriage (*i.e.*, from October 24, 1980[,] to the date of her retirement at the end of December of 1991, or 134 months) and the denominator of which is the number of months of regular and permissive service earned by Wife from the time of her initial membership in the State Employee's Retirement System through the effective date of her retirement (*i.e.*, 424.5 months), as indicated in the *Retired Members Pension Information for QILDRO Purposes* dated May 1, 2019 (which was listed as Petitioner's Group Exhibit 24 and Respondent's Exhibit 33)."

The QILDRO provides the marital portion of Mary's pension shall be determined, in part, by dividing the number of months of regular service Mary accumulated in the retirement system from the date of the marriage to the date of divorce by the number of months of regular service plus

- 5 -

permissive service Mary accumulated in the retirement system through her effective date of retirement. The QILDRO calculation order provides a calculation where the number of months of regular service Mary accumulated in the retirement system from the date of the marriage to the date of divorce is 134 and the number of months of regular service plus permissive service Mary accumulated in the retirement system through her effective date of retirement is 424.5.

¶ 14 On September 11, 2019, Lawrence filed a motion requesting the trial court "to vacate the Order entered on August 28, 2019, and enter an Order with the correct QILDRO calculations." Lawrence complained the "[QILDRO] calculation entered does not take into account the purchase[d] and accumulated time [Mary] used to retire early." Lawrence alleged the parties were married at the time of the early retirement buyout and joint marital funds were used to purchase the early retirement credits. Lawrence also alleged Mary used accumulated time to retire early. In total, Lawrence asserted an additional 107.5 months of purchased and accumulated service should have been included in the marital portion of the pension calculation. Lawrence contended to allow the "QILDRO calculation to stand would be inequitable." Lawrence scheduled a hearing on his motion for November 4, 2019.

¶ 15 On October 15, 2019, Mary filed a response to Lawrence's motion to vacate, maintaining the QILDRO and QILDRO calculation order were consistent with both the judgment of dissolution and the parties' intentions at the time of the settlement agreement. With respect to the parties' intentions at the time of the settlement agreement, Mary asserted the parties had agreed on the portion of the monthly pension payment which constituted marital property. In support, Mary cited "*Respondent's Demonstrative Exhibit A*" and a redacted August 22, 2019, letter from Lawrence's attorney, both of which she attached to her response. Respondent's Demonstrative

Exhibit A classified the nonmarital portion of Mary's monthly pension as 68.5% and the marital portion as 31.5%. The redacted letter acknowledged Mary relied upon Lawrence's "figures for the calculation of the marital/nonmarital portion of the pension" but "propos[ed] that the extra time accumulated and purchased for the early buyout be added on to the marital time portion of the pension." Mary further asserted Lawrence could not show any misclassification of the portion of monthly pension payment was caused by a mutual mistake of fact to extricate him from the agreement.

¶ 16 A November 4, 2019, docket entry indicates attorneys for both Mary and Lawrence appeared before the trial court and the hearing on Lawrence's motion to vacate was rescheduled to December 11, 2019.

¶ 17 On December 10, 2019, Lawrence filed a motion seeking leave to amend his motion to vacate along with a proposed amended motion to vacate. In his amended motion, Lawrence requested the trial court to either (1) "enforce the judgment as recited on the record" wherein no exhibit was relied upon for determining the marital portion of Mary's pension or (2) vacate "the Order entered on August 28, 2019, based on a mutual mistake of fact, and determine the marital portion of [Mary's pension] include[es] the permissive service." With respect to the initial requested relief, Lawrence began by noting, pursuant to section 502(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/502(a) (West 2018)), any settlement agreement "must be in writing, except for good cause shown with the approval of the court, before proceeding to an oral prove up." Lawrence asserted, "Should the court feel that good cause was shown as evidenced in the transcript[,] *** wherein the court states this is a final agreement and cannot be modifiable[,] *** then the court need simply determine the marital portion of [Mary's]

pension for division." With respect to the alternative requested relief, Lawrence asserted "there is a clear mutual mistake of fact in that both parties believed the marital portion of [Mary's pension] to be something different." Lawrence alleged, at the time the settlement agreement was spread of record, he believed the marital portion of Mary's pension "would naturally include the early purchased retirement years that occurred during the course of the marriage." Conversely, Lawrence alleged, Mary "relied upon an error in Respondent's exhibit in entering into the agreement." In so arguing, Lawrence also asserted, even if the court could not find a mutual mistake of fact, the court "could find for a unilateral mistake."

¶ 18     On December 11, 2019, the trial court held a hearing on Lawrence's motion to vacate and amended motion to vacate. A docket entry from that day indicates both parties appeared with their attorneys, testimony was received, and exhibits were admitted. The record on appeal contains no transcripts, bystander's report, or agreed statement of facts from the hearing. The record does contain the exhibits which were admitted into evidence. Petitioner's Exhibit A is a copy of a January 15, 1992, letter which acknowledged receipt of Mary's retirement application and election for an early retirement incentive and had photocopied thereon a copy of a check Mary wrote to purchase credits for additional months of service. Petitioner's Exhibit B is a copy of Respondent's Demonstrative Exhibit A. Respondent's Exhibit 3 is a summary of Mary's pension information for QILDRO purposes. Respondent's Exhibit 4 is a copy of a May 1, 2019, letter and an accounting of Mary's pension information for QILDRO purposes. Respondent's Exhibit 5 is a QILDRO and QILDRO calculation order proposed by Lawrence.

¶ 19     Following the hearing, the trial court entered a written order denying Lawrence's motion to vacate and amended motion to vacate. In the order, the court made several findings

"[b]ased upon the argument of counsel, testimony of the parties[,] and evidence presented." The court found: (1) all of the information concerning Mary's pension was available to the parties at the time the agreement was spread of record, (2) "[n]o agreement was outlined or stated" concerning Mary's permissive service, (3) there was no mutual mistake of fact "as Mary testified that she was aware that the marital portion being divided by the parties was the regular months of service earned by Mary during the parties' marriage," (4) the facts presented did not warrant extricating Lawrence from the agreement based upon a unilateral mistake of fact as not including Mary's permissive service as marital property did "not result in an unequitable division of marital assets," and (5) "[t]he evidence is inconclusive that Mary's permissive service is marital." Ultimately, the court found it would not be "equitable to vacate the marital settlement agreement of the parties when all of the information regarding Mary's pension *** was available to the parties at the time the agreement was spread of record."

¶ 20    This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, Lawrence argues the trial court erred by (1) entering Mary's proposed judgment of dissolution and associated orders over his objection, (2) denying his motions to vacate the judgment of dissolution and associated orders, and (3) excluding Mary's permissive service from the marital portion of her pension.

¶ 23    A. The Entry of the Judgment of Dissolution and Associated Orders

¶ 24    Lawrence argues the trial court erred by entering Mary's proposed judgment of dissolution and associated orders over his objection. Specifically, Lawrence asserts the entry of the proposed judgment and orders amounted to an abuse of discretion where the judgment and

- 9 -

orders (1) were based on an oral settlement agreement without a "good cause" finding and (2) contained contested terms which were not set forth during the oral recitation of the agreement.

¶ 25    It is well-established the appellant has the burden to present this court with a sufficiently complete record of the proceedings to support any contention of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). Absent a sufficiently complete record, we must presume "the order entered by the trial court [is] in conformity with law and had a sufficient factual basis." *Id.* at 392. Any doubts arising from an incomplete record must be resolved against the appellant. *Id.*

¶ 26    Lawrence asserts, without any citation to the record, he objected, generally, to the entry of the judgment of dissolution and associated orders during a hearing that took place on August 28, 2019. Nothing in the record, however, supports Lawrence's assertion. Moreover, Lawrence has denied this court the opportunity to review the grounds for his alleged objection and any related argument or discussion by failing to include in the record transcripts, a bystander's report, or an agreed statement of facts from the hearing. Without a sufficient record, we cannot say the entry of the judgment and orders amounted to an abuse of discretion.

¶ 27            B. The Denial of the Motions to Vacate

¶ 28    Lawrence argues the trial court erred by denying his motions to vacate the judgment of dissolution and associated orders. Specifically, Lawrence asserts the denial of his motions amounted to an abuse of discretion where the evidence at the hearing on the motions established the judgment and orders stemmed from a settlement agreement which was entered into based on a mistake of fact.

¶ 29    A marital settlement agreement is a contract. *In re Marriage of Coulter*, 2012 IL

- 10 -

113474, ¶ 19, 976 N.E.2d 337. A mistake of fact made at the time of the execution of a contract may be sufficient grounds to rescind the contract. See, *e.g.*, *In re Marriage of Agustsson*, 223 Ill. App. 3d 510, 518-20, 585 N.E.2d 207, 213-14 (1992). A party seeking to rescind a contract because of a mistake of fact must show by clear and convincing evidence that a mistake occurred. *Id.* at 519.

¶ 30    The trial court found there was no mutual mistake of fact at the time of the execution of the marital settlement agreement. The court reached that finding based on Mary's testimony indicating she believed "the marital portion being divided by the parties was the regular months of service earned by Mary during the parties' marriage." Stated differently, the court found Mary's testimony to be credible, which, in turn, defeated Lawrence's claim of a mutual mistake of fact. See *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 272, 711 N.E.2d 1194, 1198 (1999) ("The party asserting mutual mistake must show that both parties were mistaken as to a material matter at the time of the execution of the instrument."). Lawrence, on appeal, does not address Mary's testimony. He has denied this court the opportunity to review Mary's testimony by failing to include in the record transcripts, a bystander's report, or an agreed statement of facts from the hearing. Without a sufficient record, we cannot say the trial court's rejection of Lawrence's claim of mutual mistake was in error.

¶ 31    The trial court also found the facts presented did not warrant extricating Lawrence from the settlement agreement based upon a unilateral mistake of fact as not including Mary's permissive service as marital property did "not result in an unequitable division of marital assets." Stated differently, the court found any mistake on Lawrence's part was not of such a grave consequence that enforcement of the agreement would be unconscionable. See *id.* at 273

(providing a requirement for rescission based upon a unilateral mistake of fact is the mistake "is of such grave consequence that enforcement of the contract would be unconscionable"). Lawrence, on appeal, contends it would be unconscionable to enforce the agreement because absent his mistake he would receive, based on his calculations, a pension payment of $1378.31 per month as opposed to $767.96 per month. Even if, *arguendo*, Lawrence may have been entitled to a larger portion of the Mary's pension as a matter of law, he fails to recognize the recission of the settlement agreement would not necessarily increase the property he was awarded given the fact Mary, in pursuit of a settlement, gave up certain requests, such as her requests for maintenance and contribution for attorney fees. Moreover, Lawrence has denied this court the opportunity to review any testimony he may have offered concerning the economic impact of his mistake by failing to include in the record transcripts, a bystander's report, or an agreed statement of facts from the hearing. Without a sufficient record, we cannot say the trial court's rejection of Lawrence's claim of unilateral mistake was in error.

¶ 32                    C. Exclusion of Permissive Service

¶ 33        Lawrence argues the trial court erred by excluding Mary's permissive service from the marital portion of her pension. Specifically, Lawrence contends the decision to assign the permissive credits as nonmarital property was against the manifest weight of the evidence and contrary to section 503(b) of the Marriage Act (750 ILCS 5/503(b) (West 2018)) and the supreme court's recent decision in *In re Marriage of Zamudio*, 2019 IL 124676.

¶ 34        In support of his argument, Lawrence cites to the trial court's order denying his motions to vacate. At the hearing on Lawrence's motions to vacate the trial court was not, however, tasked with classifying the permissive service as marital or nonmarital property. Rather, the court

was tasked with determining whether to vacate the judgment of dissolution and associated orders due to a mistake of fact in the execution of the marital settlement agreement. Upon rejecting Lawrence's claims of a mistake of fact and, therefore, his basis for seeking to extricate himself from the settlement agreement, any comment by the court concerning whether the evidence showed the permissive service, as a matter of law, was marital or nonmarital property was irrelevant. At that point, any exclusion of Mary's permissive service from the marital portion of her pension occurred by the parties.

¶ 35                    D. Written Marital Settlement Agreements

¶ 36          Since January 1, 2016, the Marriage Act (750 ILCS 5/502(a) (West 2016)) has required any marital settlement agreement to "be in writing, except for good cause shown with the approval of the court, before proceeding to an oral prove up." See Pub. Act 99-90, § 5-15 (eff. Jan. 1, 2016). The record does not provide any indication why the attorneys for the parties elected, and the trial court permitted, this case to proceed to an oral prove up based upon an oral settlement agreement. In future cases, the attorneys and the trial court should carefully consider whether submitting an oral settlement agreement is the best course, even if "good cause" can be shown. See 12 Jody Meyer Yazici, David I. Grund, Marvin J. Leavitt, Illinois Practice, Family Law § 502 (19th ed. 2020) (author's note 9).

¶ 37                              III. CONCLUSION

¶ 38          We affirm the trial court's judgment.

¶ 39          Affirmed.