NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 241019-U

NO. 4-24-1019

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 18, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* P.C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|      Petitioner-Appellee, | ) | No. 18JA200 |
|      v. | ) | |
| Timothy C., | ) | Honorable |
|      Respondent-Appellant). | ) | Timothy J. Cusack, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Knecht concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court dismissed the appeal for lack of jurisdiction.

¶ 2  In June 2019, P.C. (born November 2007), the minor child of respondent, Timothy C. (Father), was adjudged a neglect and/or abused minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2018)) and placed in the custody of the Illinois Department of Children and Family Services (DCFS). In June 2022, the State petitioned to terminate the parental rights of Father and P.C.'s mother, who is not a party to this appeal, but voluntarily dismissed the petition after the trial court changed P.C.'s permanency goal to guardianship. In June 2024 and July 2024, the court entered permanency orders finding, *inter alia*, Father was dispositionally unfit pursuant to section (1)(D)(m)(ii) of the Adoption Act

(750 ILCS 50/1(D)(m)(ii)(West 2024)). Father appeals, arguing the court's unfitness findings were against the manifest weight of the evidence. We dismiss for lack of jurisdiction.

¶ 3                                    I. BACKGROUND

¶ 4           On November 19, 2018, the State filed a shelter care petition alleging P.C. was neglected and his environment was injurious to his welfare. The petition alleged P.C.'s mother threatened her boyfriend with a knife while P.C. was in the house and intentionally cut herself, which resulted in her boyfriend calling 911. The petition further alleged she and her boyfriend used cocaine frequently and her boyfriend abducted P.C. at her request. The petition also alleged Father was convicted of unlawful possession of a controlled substance in Woodford County case No. 12-CF-56, was currently on probation, and "ha[d] not been compliant with probation for several years." The trial court entered a temporary custody order placing P.C. in the custody and guardianship of DCFS.

¶ 5           On February 28, 2019, Father filed an answer to the shelter care petition asking the court to grant him custody of P.C. In an integrated assessment filed that same day, Father admitted to "abusing" cocaine and crack cocaine beginning in 2017 and most recently using crack cocaine in July 2018. He was arrested for possession of a controlled substance in 2012 and received four years' probation. However, he failed to comply with the terms of his probation, which was subsequently revoked, and he was currently completing a new 24-month probation term. Father had four arrests and four convictions for possession of a controlled substance, all of which occurred between 2012 and 2018. Father had been diagnosed with posttraumatic stress disorder and was prescribed medication, which he stopped taking because he did not like the side effects. The integrated assessment recommended Father complete substance abuse treatment, comply with random drug screens, engage in individual psychotherapy, complete a psychiatric

consultation and medical assessment, develop a comprehensive social and emotional support system, and maintain stable income and housing. Father expressed anger at having to participate in services because he believed he was not responsible for P.C. being placed in the care of DCFS.

¶ 6         The dispositional hearing report filed May 28, 2019, asserted Father was not taking his recommended medication or participating in services, relapsed on cocaine and marijuana, and was admitted into a residential substance abuse treatment program. Father completed the program on June 15, 2019, but he still refused to take his medication, and he did not complete any of his scheduled drug drops.

¶ 7         On June 30, 2019, the trial court adjudged P.C. an abused and/or neglected minor, finding his environment was injurious to his welfare and the abuse or neglect was inflicted by his mother, his mother's boyfriend, and Father. See 705 ILCS 405/2-3(1)(b) (West 2018). The court found Father dispositionally unfit due to his substance abuse issues, refusal to comply with drug drops, and his need for additional time to complete residential drug treatment. See 750 ILCS 50/1(D)(k) (West 2018)). Father appealed the dispositional order, and the appellate court's majority reversed the unfitness determination, finding the record did not establish Father "indulged in an ongoing pattern of drug use within the one-year period prior to the dispositional hearing" or that he was unable or unwilling to refrain from drug use. *In re P.C.*, 2020 IL App (3d) 190510-U, ¶¶ 20-21.

¶ 8         While his appeal was pending, Father relapsed and was admitted into a residential treatment program, which he successfully completed on January 6, 2020. Father was admitted into another residential treatment program on July 10, 2020, but he was involuntarily released before completing the program after getting into an argument regarding his medications. On

November 7, 2020, Father was arrested for theft, and caseworkers learned he had been using opiates for the previous eight months. On January 22, 2021, Father was arrested on an outstanding warrant for theft. On April 1, 2021, Father once again entered a residential substance abuse treatment program. On July 8, 2021, Father was arrested again, the State petitioned to revoke his probation, and the State requested Father receive two-and-a-half-years' imprisonment. All of which proved the point of Justice Schmidt's dissent in *P.C.*, 2020 IL App (3d) 190510-U, which said, "One need only read the majority's statement of facts to conclude that the trial court's ruling was not against the manifest weight of the evidence. Even assuming that reasonable people could disagree with the finding, the court's ruling [that Father had a current 'substance abuse problem' and was actively addicted to drugs for at least one year prior to the unfitness proceeding] was not against the manifest weight of the evidence."

¶ 9 On August 5, 2021, the trial court conducted a permanency review hearing. The State argued Father was unable to care for P.C. due to his "significant legal issues," his failure to address his mental health difficulties, and the prison sentence he faced. The court found Father remained unfit and had not made reasonable efforts to obtain custody of P.C. Father appealed, and the reviewing court affirmed the trial court's judgment and permitted Father's appointed appellate counsel to withdraw as counsel. See *In re P.C.*, No. 3-21-0411 (Ill. 2022) (unpublished order under Supreme Court Rule 23).

¶ 10 On June 8, 2022, the State filed a petition to terminate the parental rights of both Father and P.C.'s mother, alleging Father failed to make reasonable progress toward P.C.'s return to his custody from September 1, 2021, through June 1, 2022. See 750 ILCS 50/1(D)(m)(ii) (West 2022)). On September 7, 2022, the trial court changed P.C.'s permanency goal to guardianship based on Father's lack of progress, and the State voluntarily dismissed the

- 4 -

petition. Father appealed the goal change, but the appellate court dismissed the appeal for lack of jurisdiction, as the goal change was not a final order and Father did not petition for leave to appeal the interlocutory order pursuant to Illinois Supreme Court Rule 306(b) (eff. Oct. 1, 2020). *In re P.C.*, No. 1-23-0226 (2023) (unpublished summary order under Illinois Supreme Court Rule 23(c)(1)).

¶ 11    On November 30, 2022, the trial court enter a permanency order, which found Father remained unfit.

¶ 12    On June 3, 2024, a permanency hearing report was filed indicating Father was recently discharged from inpatient treatment and was cooperating with his caseworker. It was unclear whether Father was still using substances, but he did not appear to be under the influence of any substances during his visits with P.C., which he attended regularly. Neither Father nor his attorney appeared at the permanency hearing held on June 5, 2024, and the trial court entered a permanency order finding Father unfit.

¶ 13    On July 5, 2024, Father filed a motion to reconsider the permanency order. On July 9, 2024, Father filed an "Objection to Permanency Hearing Report Dated 06/05/2024," and a petition to regain fitness, insisting he "[did] not have a single allegation by D.C.F.S. asserting he is unfit for the caretaking of his son" and he "had participated in all the programs required."

¶ 14    During a hearing on July 10, 2024, the trial court denied Father's motion to reconsider and withheld judgment on his objection and petition to regain fitness, finding they were not timely filed. No parties presented any further additions, deletions, or corrections to the permanency hearing report, and Father's counsel did not make any responsive argument to the State's recommendation that Father be found unfit. The court entered a permanency order finding Father remained unfit and maintaining guardianship as P.C.'s permanency goal.

¶ 15 On July 24, 2024, Father filed a "Notice of Interlocutory Appeal," which sought to challenge the trial court's permanency orders entered on June 5, 2024, and July 10, 2024.

¶ 16 This appeal followed.

¶ 17                    II. ANALYSIS

¶ 18 On appeal, Father argues the unfitness findings contained in the trial court's permanency orders entered on June 5, 2024, and July 10, 2024, were against the manifest weight of the evidence. The State argues this court lacks jurisdiction over Father's appeal. We agree with the State and dismiss the appeal.

¶ 19 "[T]his court has an independent duty to consider whether it has jurisdiction over an appeal and to dismiss the appeal if it finds that jurisdiction is lacking." *In re Tiona W.*, 341 Ill. App. 3d 615, 619, 793 N.E.2d 105, 108 (2003). The nature of the order appealed is relevant when determining whether jurisdiction exists. *In re Faith B.*, 216 Ill. 2d 1, 16, 832 N.E.2d 152, 161 (2005). A permanency order is generally not considered a final order for purposes of appeal because it is subject to review and reevaluation within at least six months. *In re K.C.*, 2024 IL App (1st) 231166, ¶ 106, 243 N.E.3d 314; see 705 ILCS 405/2-28(2) (West 2022). "[A] permanency order may be considered a final judgment *** if the order appears to be 'final and immutable' at the time it was made, meaning that if a permanency 'goal has been reached,' the order may constitute a final judgment." (Emphasis omitted.) *K.C.*, 2024 IL App (1st) 231166, ¶ 107 (quoting *Faith B.*, 216 Ill. 2d at 17-18). Such an order may not be final and appealable if it "does not permanently determine the rights of the parties or definitely resolve any issue in the case." (Internal quotation marks omitted.) *K.C.*, 2024 IL App (1st) 231166, ¶ 107. The orders in question neither permanently determined Father's rights nor definitely resolved any issues. Both orders set guardianship as P.C.'s permanency goal, found the permanency goal had not been

achieved, found Father remained unfit, and set a date for the next permanency hearing. Accordingly, neither order is a final appealable judgment. See *K.C.*, 2024 IL App (1st) 231166, ¶ 107.

¶ 20        Under Illinois Supreme Court Rule 307(a)(6) (eff. Nov. 1, 2017), upon which Father's brief relies for jurisdiction, a party may appeal an interlocutory order "terminating parental rights or granting, denying or revoking temporary commitment in adoption proceedings." Ill. S. Ct. R. 307(a)(6) (eff. Nov. 1, 2017). Father's reliance on Rule 307(a)(6) is inapt, as the permanency orders from which he appeals did not terminate his parental rights, nor are adoption proceedings involved in this case.

¶ 21        Under Illinois Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2020), "[a] party may petition for leave to appeal *** from interlocutory orders affecting the care and custody of *** unemancipated minors." Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020). As an initial matter, because defendant filed his notice of appeal on July 24, 2024, his efforts to appeal the order entered June 5, 2024, are untimely. See Ill. S. Ct. R. 306(b)(1) (eff. Oct. 1, 2020) (stating petitions requesting leave to appeal from interlocutory orders affecting the care and custody of unemancipated minors must be filed within 14 days of the order from which review is sought). While his notice of appeal was filed 14 days after the July 10, 2024, order was entered, Father did not file the requisite petition for leave to appeal under Rule 306. See Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020). Reviewing courts have excused noncompliance with Rule 306 in the interest of judicial economy (see *In re Marriage of Agustsson*, 223 Ill. App. 3d 510, 517, 585 N.E.2d 207, 212 (1992)) or where an appellant relied upon rule language subsequently deemed unconstitutional (see *In re Curtis B.*, 203 Ill. 2d 53, 63, 784 N.E.2d 219, 225 (2002)). However, these decisions are discretionary. See *In re Alicia Z.*, 336 Ill. App. 3d 476, 494, 784 N.E.2d 240, 253 (2002).

Courts have not extended similar leniency where "no case or statute suggested that such an order was final and appealable" and the appellant had "no reason to believe that *** his noncompliance with Rule 306 would be excused." *Alicia Z.*, 336 Ill. App. 3d at 493.

¶ 22 We find no reason to excuse Father's noncompliance with Rule 306. As in *Alicia Z.*, the orders from which Father appeals were not final and appealable, and he had no reason to believe his noncompliance with Rule 306 would be excused. See *Alicia Z.*, 336 Ill. App. 3d at 493. We note this is not the first time Father failed to follow the rules governing interlocutory appeals—in *In re P.C.*, No. 1-23-0226 (2023) (unpublished summary order pursuant to Illinois Supreme Court Rule 23(c)(1)), Father's appeal was dismissed for failing to comply with the requirements of Rule 306(b). See *People v. Jackson*, 182 Ill. 2d 30, 66, 695 N.E.2d 391, 409 (1998) ("[A] court will take judicial notice of its own records.").

¶ 23 The permanency orders at issue were not final and appealable. See *K.C.*, 2024 IL App (1st) 231166, ¶¶ 106-07. Father failed to comply with Rule 306 by not submitting a petition for leave to appeal under Rule 306(a)(5), which allows for interlocutory appeals of permanency orders, and we find no reason to excuse his noncompliance. See Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020); *Alicia Z.*, 336 Ill. App. 3d at 494. Finally, the rule upon which Father relies for jurisdiction does not apply to his case. See Ill. S. Ct. R. 307(a)(6) (eff. Nov. 1, 2017). Accordingly, we lack jurisdiction and must dismiss the appeal.

¶ 24 III. CONCLUSION

¶ 25 For the foregoing reasons, we dismiss the appeal.

¶ 26 Dismissed.